CRAWFORD et al. v. WELLINGTON RAILROAD COMMITTEE et al. (No. 607.)

(Court of Civil Appeals of Texas. Amarillo. Feb. 6, 1915. On Motion for Rehearing, March 27, 1915.)

1. APPEAL AND ERROR ⟜643 — CORRECTION OF RECORD—TIME AND NECESSITY—RULE OF COURT.

Under rules 8 and 11 of the Courts of Civil Appeals (142 S. W. xi), providing that a motion to correct the transcript shall be filed within 30 days after its filing, and shall show a necessity therefor appearing on the record, a motion to correct a transcript filed more than 30 days after filing the transcript, and on which it appeared that the appellee's affidavits opposing an application for a change of venue were never presented to the court or acted upon by it, would be denied because too late, and as showing no necessity for correction.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2791–2794; Dec. Dig. ⟜643.]

2. APPEAL AND ERROR ⟜766—BRIEFS—FILING.

Where the parties, by an agreement on file in the court, abrogated the rules with regard to the filing of briefs, and the appellant did not object to the filing of appellee's brief, though not presented within the time agreed, the clerk would be directed to file the brief as of the date when presented.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3101, 3126; Dec. Dig. ⟜766.]

3. SUBSCRIPTIONS ⟜15 — RESCISSION—PERFORMANCE OF CONDITIONS PRECEDENT.

In a suit by a committee of local subscribers to a railroad project for the possession and cancellation of certain promissory notes issued in aid of railroad construction, on the ground of a total failure of consideration by failure to complete the grade work within the time allowed by the contract, which was declared of the essence of the contract, where it appeared that the committee knew that the contractor had been enjoined, and that the injunction suit was due to its own failure to furnish title to a part

of the right of way, the committee was itself in default, and was not entitled to relief.

[Ed. Note.—For other cases, see Subscriptions, Cent. Dig. §§ 14–17; Dec. Dig. ☞15.]

4. SUBSCRIPTIONS ☞15—PERFORMANCE—REPUDIATION BY OTHER PARTY.

In such case where the committee filed a pleading repudiating its liability upon any of the notes, it could not recover for any failure of performance on the part of the railroad.

[Ed. Note.—For other cases, see Subscriptions, Cent. Dig. §§ 14–17; Dec. Dig. ☞15.]

5. SUBSCRIPTIONS ☞15 — PERFORMANCE OF CONDITIONS.

In such case, the further performance of the contract by the railroad was excused by the committee's express repudiation of its notes made and delivered for the benefit of the railroad.

[Ed. Note.—For other cases, see Subscriptions, Cent. Dig. §§ 14–17; Dec. Dig. ☞15.]

6. JUDGMENT ☞256—FINDINGS OF JURY—VERDICT—CONFORMITY.

Vernon's Sayles' Ann. Civ. St. 1914, art. 1985, providing that, upon appeal or writ of error, an issue not submitted and not requested by a party shall be deemed found by the court, so as to support judgment, if there is evidence to sustain such a finding, does not affect articles 1986, 1990, declaring that, as between the parties, a special verdict shall be conclusive as to the facts found, and that, unless the verdict be set aside, the court shall render judgment thereon, nor authorize the trial court in rendering judgment to disregard findings upon material issues; and hence, where all the material findings of the special verdict entitle one of the parties to judgment, the trial court can only set aside the verdict and grant a new trial, or render judgment in conformity with the verdict, and can in no case render judgment contrary to the verdict.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 446–454; Dec. Dig. ☞256.]

7. TRIAL ☞356—FINDINGS—EFFECT.

Where all the material findings were in favor of the plaintiff, but judgment was rendered for defendant on motion, the action of the jury in failing to agree upon findings deciding anything material in favor of defendant, necessary to judgment in his favor, was tantamount to a mistrial.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 849–854; Dec. Dig. ☞356.]

8. VENUE ☞42—CHANGE OF VENUE—STATUTES.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1912, providing for change of venue on application stating prejudice against a party preventing a fair trial, and article 1913, providing that, where application for change of venue is made according to the preceding article, it shall be granted unless the credibility of the applicant, his means of knowledge, or the truth of the facts alleged by him are attacked by affidavit of a credible person, a change of venue is mandatory on the prescribed showing; and, independently of such provisions, a contractor suing a committee on its railroad aid notes would be entitled to a change of venue, where many citizens were directly or indirectly interested.

[Ed. Note.—For other cases, see Venue, Cent. Dig. § 64; Dec. Dig. ☞42.]

On Motion for Rehearing.

9. SUBSCRIPTIONS ☞21 — CONSTRUCTION OF PLEADING—RESCISSION.

A subscriber's committee, impleaded in a contractor's action against the railroad, which answered, setting up failure to comply with the construction contract and nonliability on aid notes, and which in its plea in reconvention alleged failure to construct the railroad, breach of the construction contract, and failure of consideration for its notes, and sought to have such notes canceled and delivered to it, evidenced an intention to rescind the contract.

[Ed. Note.—For other cases, see Subscriptions, Cent. Dig. §§ 25–29; Dec. Dig. ☞21.]

10. APPEAL AND ERROR ☞390 — APPEAL BOND—AMENDMENT.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 2104, authorizing the amendment of appeal bonds, both as to matters of form and substance, appellee, on the filing of a defective appeal bond giving the Court of Civil Appeals jurisdiction, should have filed a motion pointing out the defect in time, whereupon appellant could have amended, if found defective.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2077–2088; Dec. Dig. ☞390.]

Appeal from District Court, Collingsworth County; J. A. Nabers, Judge.

Action by C. W. Crawford and another against the Altus, Lubbock & El Paso Railroad Company and another, who impleaded the Wellington Railroad Committee. Judgment for defendants, and plaintiffs appeal. Reversed and remanded.

W. W. Wilkinson, of Ft. Worth, Reynolds & Hill, of Shamrock, J. L. Lackey, of Wellington, J. M. Elliott, of Memphis, L. D. Miller, of Wheeler, and R. E. Taylor, of Henrietta, for appellants. G. A. Brown, of Oklahoma City, and R. H. Cocke, Jr., and R. H. Templeton, both of Wellington, for appellees.

WILLIS, Special Justice. [1] Appellees filed in this court on October 10, 1914, their motion to correct the record in this cause, accompanied by a certified copy of the instrument asked to be filed, which consists of objections to a motion for change of venue and affidavits, filed by appellees in the district court on November 11, 1912. Appellants have filed in this court their objections to said motion of appellees to correct the record, and they suggest that the motion to correct the record is not filed within the time prescribed by rules 8 and 11 (142 S. W. xi) for the government of this court.

Appellees urge as a necessity for the filing of this additional transcript:

"That appellants urge in their brief that their motion for change of venue was uncontroverted by appellees."

An examination of the transcript of the record on the subject does not show that the record is incomplete. It appears that appellants had filed in the trial court an application for a change of venue in November, 1912, to which appellees' proffered record was a response at that time, but we are not informed of the grounds of the first application of appellants. A subsequent motion of appellants to change the venue appears in the transcript filed on November ——, 1913. It does not appear that the controverting affidavits sought to be supplied by appellees

were ever presented to the court or acted upon by it in reference to the motion for change of venue which appears in the transcript, or that they were in any way called to the attention of the court at that time. The record does not show any necessity for filing the corrections, and the motion to correct the transcript is filed more than 30 days after filing the transcript in this court. Under rules 8 and 11 for the Courts of Civil Appeals, where a motion for certiorari to perfect the record is filed more than 30 days after the filing of the transcript, and no necessity appears for the same from the record, the Court of Civil Appeals cannot entertain such motion.

[2] Appellees also filed a motion to be allowed to file their briefs, which appear to have been placed with the clerk of this court on October 10, 1914, but not filed by him, because not presented within the time agreed upon between the respective parties. Appellants do not object to this motion, and it appears that the parties, by their agreement on file in this court, have abrogated the rules with reference to filing of briefs. It is therefore ordered that the motion of appellees ·be granted, and the clerk of this court is directed to file the briefs of appellees, as of the date presented, to wit, October 10, 1914.

It seems indisputable from this record that a contract was made between the Altus, Lubbock & El Paso Railroad Company and the Wellington Railroad Committee, composed of numerous citizens of Collingsworth county, by the terms of which said railroad company is obligated to complete a grade for a standard gauge railroad from Wellington, Tex., to Hollis, Okl., by March 1, 1910, and to complete said railroad thereon by January 1, 1911, time being the essence, in consideration that the committee would furnish depot grounds and right of way in Collingsworth county and pay to the railroad company $4,000 in cash, and notes aggregating $36,000, to be deposited in Wellington banks; $16,000 worth to become due when the grade was completed, and the balance when the railroad was completed.

The contract was made April 15, 1909, and we quote from its provisions as follows:

"Third. That said party of the second part [the Wellington Railroad Committee] shall deposit in the banks of Wellington, Texas, the sum of four thousand dollars in cash, subject to the checks of Edward Kennedy, president of the said first party railroad company, for engineering and promoting said line of proposed road from Wellington, Texas, through said Collingsworth county, Texas; also said second party shall deposit in said banks of Wellington, Texas, good notes for the sum of thirty-six thousand dollars, $16,000.00 of which shall become due and payable when said first party completes said grade of said railroad between the towns of Wellington, Texas, and Hollis, Oklahoma, according to this contract; the remaining $20,000.00 of which shall become due and payable to the first party upon the ·completion of said railroad between the said towns of Wellington, Texas and Hollis, Oklahoma, according to the terms of this contract."

"Fourth. The said party of the first part shall make a preliminary survey of the said road between the towns of Wellington, Texas, and Hollis, Oklahoma, within sixty days, and shall make a complete .and permanent survey within sixty days from the making and signing of this contract.

"Fifth. That the said parties of the second part shall begin securing deeds of right of way within ten days from the time of notice that survey locating said right of way has been completed, and continue same with due diligence until deeds to the entire right of way have been secured. Said deeds of right of way are to be delivered to party of the first part upon its obtaining a charter from the state of Texas, to build and maintain over permanent survey; in case condemnation proceedings are necessary to secure any part of said right of way, said party of the first part shall institute proper proceedings to secure same upon notice by party of the second part that such condemnation proceedings are necessary, and said second party shall pay all cost, expense of court and damage that may be awarded by such proceedings; said second parties are to secure legal services for the institution and prosecution of such condemnation proceedings.

"Sixth. It is agreed by and between both of the parties hereto that the grading of said railroad shall begin at Wellington, Texas, within sixty days from the date of this contract, and pushed to completion as rapidly as possible, and be completed not later than March 1st, 1910, after date hereof, and failure to complete said grade on or before said date forfeits all rights, interests and privileges under and by virtue of this contract."

"Eleventh. The party of the first part obligates itself to construct, equip and complete said line of railroad from Hollis, Oklahoma, to Wellington, Texas, on or before January 1st, 1911, and failure by party of the first part to complete said road according to the terms of this contract and in the time herein specified thereby forfeits all rights, interests and claims upon the said second party by virtue of this contract. It is hereby agreed that time is made an essential of this contract, and it is a part of this consideration passing from the said second party."

"Thirteenth. It is agreed and understood that should the party of the first part fail to begin actual work on ·said grade within the time specified in the contract, or fail to complete the grade within the said time herein specified and stipulated for the completion of same, said first party hereby forfeits any and all rights, interests and claims by virtue of this contract upon said second party. It is further agreed and stipulated that if the said party of the first part, or its assigns, fails to construct, equip, complete and operate said line of road from the said town of Hollis, Oklahoma, to Wellington, Texas, within the time herein specified for the completion of the same, and in the manner herein specified, said first party shall thereby forfeit any and all further claims to interest by virtue of this contract."

The notes provided for in the contract were made and were delivered to the committee in trust, which committee delivered the grade notes in escrow to C. J. Glenn, cashier of the First National Bank of Wellington, and the balance of the notes were retained in possession of the committee. The grade notes were indorsed and delivered by C. J. Glenn to appellants Crawford and Collingsworth, who distributed them to various other claimants.

Hines and Crawford were subcontractors and assumed to complete the grade under the

contract, but were interrupted by an injunction suit, brought by a claimant of the portion of the right of way known as "the Stansell land," which delayed them until after March 1, 1910, the time for completion of the grade. On March 24, 1910, C. W. Crawford and F. T. Collingsworth instituted this suit against the railway company and Edward Kennedy ·for 'possession of the notes as assignees and subcontractors, and on April 4, 1910, said railway company and Kennedy answered in the case and impleaded the Wellington Railroad Committee, alleging a breach of the contract by said committee and praying for judgment against said committee for the amount of the grade notes. On May 16, 1910, the Wellington Railroad Committee answered in the cause and alleged a failure to construct the railroad according to contract and nonliability upon any of the notes. On May 17, 1910, the Wellington Railroad Committee filed a plea in reconvention, making additional parties, and praying judgment for possession of the grade notes, and for cancellation of the construction contract and of all of the notes, on account of alleged failure to construct the railroad in accordance with the contract. The pleadings in the case assumed numerous transformations, by dismissal of parties and reinstatement, and at the trial the Wellington Railroad Committee, appellees, had assumed the role of plaintiffs, asking for possession and cancellation of the notes as against all parties. The trial was had on November 22, 1913, before a jury, and the case was submitted upon numerous special issues, to most of which the jury answered that they could not agree. About the only material findings of the jury were as follows:

"(2) Special question requested by the defendants: Did the Wellington Railroad Committee, or any of the members thereof, have any information or notice prior to March 1, 1910, that an injunction proceeding was instituted to restrain the grade contractors from entering upon and doing the grade work upon the Stansell property, described as section 47, block 10, of the Houston & Great Northern Railroad Company, in Collingsworth county, Tex.? Answer: Yes."

"(9) Did said railway committee fail to furnish any of the deeds or title to any of the right of way over lands which the Altus, Lubbock & El Paso Railroad Company was surveyed and ran into and through Collingsworth county, Tex.? Answer: Yes.

"(10) If you answer in the affirmative, then state over what and whose land the said railroad committee failed to get the right of way over the land same was surveyed and ran. Answer: The Stansell land."

The court rendered judgment for appellees for the possession and cancellation of all the notes and for cancellation of the contract.

[3] With the above findings of the jury in the record, and as we view the entire record, without any material findings evidencing a noncompliance with the contract in constructing the grade, we are at a loss to know upon what theory the trial court could have rendered a judgment against appellant, unless presumably it was upon the doctrine of entirety of contract, which we hold, however, has no application whatever to this record. All the special issues submitted to the jury are incorporated in the judgment with the responses of the jury thereto, and exhibiting a failure to agree upon material issues necessary to sustain a judgment in favor of appellees; and it is apparent upon the record that the trial court committed fundamental error in the rendition of this judgment.

The appellees pleaded total failure of consideration by breach of the contract on the part of those who were to construct the grade and railroad. They instituted their suit but a few days after the grade could have been completed, asking for the cancellation of the grade notes, at a time long prior to the date for the final completion of the railroad under the contract. Their original pleading alleged breach of the contract only as to the grade notes by reason of the failure to comply. They could not at that time have complained of the failure to construct the railroad according to contract, because the time for its construction lacked more than seven months until the expiration date. The same suit continued until their amended pleading upon which they went to trial, in which they relied for breach of the contract upon the failure to complete the grade and the railroad by the dates named in the contract. Their suit was an equitable one, and it devolved upon them to show that the railroad company and its assigns were in default, without the fault of appellees themselves. The principle appears to be authoritatively recognized that whether the suit be one in equity for a specific performance, or an action at law for the breach of the agreement, the plaintiff must have performed "the precedent conditions incumbent on him." Mitchell v. Sheppard, 13 Tex. 491. Nevins v. Thomas, 80 Tex. 599, 16 S. W. 332. The material findings of the jury not only failed to show that the appellees, as plaintiffs, had discharged their burden in this respect, but further showed that they failed to furnish the right of way over the Stansell land, as their contract bound them to do, after they knew that an injunction had been issued, restraining the grade contractors from doing the grade work on that property. This placed the plaintiffs in default to such an extent that they had violated a material provision of their contract, essential to their right to recover, and the rendition of the judgment was contrary to the findings of the jury, recited in the judgment, which, as stated, is fundamental error, apparent of record.

[4, 5] It is insisted by appellees that the failure to construct the railroad upon the grade placed the railroad company and its assigns in default. We hold, however, that the further performance of the contract in this regard was excused by the pleadings of the appellees. There is an agreement in the

record, showing that on May 16, 1910, the appellees, the railroad committee, filed in this cause their pleading in which they repudiated their liability upon any of the notes, and the railroad was not to be completed under the contract until January 1, 1911.

"Where one party assumes to renounce a contract (that is, by anticipation, refuses to perform it), he thereby, so far as he is concerned, declares his intention then and there to rescind the contract. Such a renunciation does not, of course, amount to a rescission of the contract, because one party to a contract cannot by himself rescind it; but by wrongfully making such a renunciation of the contract he entitles the other party, if he pleases, to agree to the contract being put an end to, subject to the retention by him of his right to bring an action in respect to such wrongful rescission." Bost v. McCrea, 172 S. W. 561, not yet officially published, decided by this court November 28, 1914; Greenwall v. Markowitz, 97 Tex. 479, 79 S. W. 1069, 65 L. R. A. 302; Cornelius v. Harris, 163 S. W. 349.

The appellees by their original and amended pleadings placed themselves in the attitude of repudiating the contract by refusing to pay the notes, and thereby could not recover for any further lack of performance upon the part of appellants. Hardeman-King Lumber Co. v. Hampton Bros., 104 Tex. 585, 142 S. W. 867; Id., 130 S. W. 647; McLane v. Elder, 23 S. W. 758.

[6] As stated, incorporated within the judgment are numerous special issues submitted to the jury, some of them very material to this cause of action, to which the jury answered, "We cannot agree." For instance, the jury were requested to find whether or not the injunction suit was the cause of the grade not being completed on time, and whether or not it could have been completed on time, had the injunction suit not been instituted, and whether or not the grade was sufficient for a standard gauge railroad, provided for in the contract, and numerous others, to all of which they answered that they did not agree. All the real material findings, as we view them, are in favor of appellants, and none of them are in favor of appellees. It is true the jury found that the grade was not completed by March 1, 1910, but this must be coupled with their other findings in which they found that an injunction was issued preventing work upon the grade over the Stansell land, on the right of way, that the railroad committee knew of this and failed to furnish the right of way over said land, thus finding that appellees breached the contract and prevented its further performance. And the further finding that they did not complete the road by January 1, 1911, becomes immaterial, in view of the pleading of appellees repudiating and renouncing the contract—said pleading filed several months before the railroad could have been finished—thereby excusing performance on the part of the contractors. Of course, upon another trial, if the jury find that the contractors did not construct the grade in substantial conformity with the contract, the case is at an end in favor of

appellees, irrespective of the time in which the same was built. Following the verdict, the appellees moved the court to render judgment in their favor, which was granted, thus disregarding the material findings of the verdict. The statute with reference to special verdicts was amended in 1897, which amendment is now incorporated in article 1985 of Vernon's Sayles' Civil Statutes 1914, providing that:

"Upon appeal or writ of error, an issue not submitted and not requested by a party to the cause shall be deemed as found by the court in such manner as to support the judgment: Provided, there be evidence to sustain such a finding."

But this amendment does not authorize the trial court, in rendering judgment, to disregard findings of the jury on material issues. The amendment does not in any way affect articles 1986 and 1990, and these declare that, as between the parties, a special verdict shall be conclusive as to the facts found, and that, unless the verdict be set aside, the court shall render judgment thereon. So it seems quite clear that when a special verdict has been returned, which entitles one of the litigants to a judgment, there are but two alternatives for the trial court: One is to set aside the verdict and grant a new trial, and the other is to render judgment upon and in conformity with the verdict. And the court cannot properly decline to pursue either course, and render judgment contrary to the verdict. Scott v. Farmers' & Merchants' Nat. Bank, 66 S. W. 493; Casey Swasey Co. et al. v. Manchester Fire Insurance Co., 32 Tex. Civ. App. 158, 73 S. W. 865; Fant v. Sullivan, 152 S. W. 515; Weinstein v. Acme Laundry, 166 S. W. 126.

[7] In so far as the findings deciding anything material in favor of appellees necessary for an adjudication in their favor, the action of the jury in failing to agree is tantamount to a mistrial.

Upon what we have said we will sustain the eighth, ninth, twelfth, and thirteenth assignments of error, all of which are based on the proposition that the court erred in rendering judgment against the jury's findings upon the evidence. All other assignments of error are overruled, except the first assignment.

[8] In the first assignment of error the appellants complain of the court's action in overruling a motion to change the venue of the cause. The application was made to conform to article 1912 of Vernon's Sayles' Civil Statutes 1914, in stating that there was so great a prejudice against the appellants they could not obtain a fair and impartial trial, and there were no controverting affidavits filed thereto. Article 1913 of said statute provides:

"Where application for a change of venue is made in conformity to the requirements of the preceding article, the same shall be granted, unless the credibility of the persons making the application for a change of venue, or their means of knowledge, or the truth of the facts

set out in the said application, are attacked by the affidavit of a credible person."

Under the statute, the change of venue is mandatory, when the prescribed showing is made, and entitles the applicant thereto as a matter of right. Freeman v. Ortiz, 136 S. W. 116; 4 Encyc. Plead. & Prac. 440.

Independent of the statutory provisions, we are of the opinion that a record could be made in a cause of action such as presented by this record, which would warrant the court in changing the venue, especially where a great number of citizens of means are shown to be directly or indirectly interested, and where the jury, by their failure to answer uncontroverted issues, indicate such a dissentious state of feeling.

For the errors indicated, the cause is reversed and remanded.

### On Motion for Rehearing.

HATHAWAY, Special Chief Justice. [9] Appellees, in their motion for rehearing, in their fourth assignment, insist that we were in error in holding that the original pleadings of appellees evidence an intention to rescind the contract between the railroad committee (appellees) and the Altus, Lubbock, Roswell & El Paso Railroad Company and Edward Kennedy. The assignment then undertakes to set out the contents of the original pleadings of the parties, but we do not find such pleadings, as contended by appellees, in this record, hence cannot be considered. The original pleadings we find condensed by agreement of all parties in the statement of facts, that of appellees as follows:

"May 16, 1910. "The Wellington Railroad Committee and other makers of the railroad bonus notes filed in said cause No. 181, there answered to the petition of Crawford and Collingsworth and to the cross-action of the Altus, Lubbock, Roswell & El Paso Railroad Company and Edward Kennedy, setting up failure to comply with the construction contract and nonliability on the grade and other bonus notes."

"May 17, 1910. "The Wellington Railroad Committee and others (now prosecuting as plaintiffs in this action) filed in said cause No. 181 their plea in reconvention in due form against the Altus, Lubbock, Roswell & El Paso Railroad Company and Edward Kennedy, C. W. Crawford, and F. T. Collingsworth, alleging, in substance, the failure to construct the railroad between the towns of Hollis and Wellington, and breach of the construction contract with the Altus, Lubbock, Roswell & El Paso Railroad Company and Edward Kennedy, the failure of consideration for the railroad bonus notes, including the $16,000 in grade notes sued for and other notes, aggregating $20,000, payable upon completion of said railroad, and alleging that said grade notes were then in possession of the First National Bank of Wellington and C. J. Glenn, who hold the same in escrow for the party finally entitled thereto under the construction contracts, and praying that the bank and said Glenn be made parties to said action and for judgment against all parties declaring said construction contract and all said bonus notes canceled, null, and void, and for possession of said grade notes."

Now, if the substance of the original pleadings of appellees, as set out in the statement of facts and agreed to by all parties, is incorrect, and does not show the true issues as presented in the whole pleading, we are unable to go outside the record to find such error, if in existence; and such affirmative pleading in reconvention filed before the maturity of the contract, in connection with pleadings subsequently filed, exhibit a continued and systematic manifestation of a repudiation of the contract and a disposition not to be bound upon the same, claiming that said contract was void against said railroad committee.

Counsel, in their oral argument on this motion, strenuously insist that the contract between the appellees and Kennedy and the railroad company is an entirety. We agree with them that the contract on its face is entire, with payments in installments, as held in Jones v. Gammel-Statesman Publishing Co., 94 S. W. 195; and Id., 100 Tex. 331, 99 S. W. 701, 8 L. R. A. (N. S.) 1197; but before the expiration of the time for the completion of the contract, and when appellants claim that the first installment is due, the appellees, by their pleadings, as above quoted, refused payment and repudiate the contract and declare the contract and all bonus notes canceled, which not only includes the grade notes but the notes for final payment not yet earned by the final completion of the railroad, thus seeking to abrogate the whole contract before it can or is required to be performed by the railroad company. Appellees thereby place themselves in a position that they cannot complain if the railroad company refuses to complete the contract (Hardeman-King Lumber Co. v. Hampton Bros., 104 Tex. 585, 142 S. W. 867; Id., 130 S. W. 647), which cause, as shown by the opinion of the Court of Civil Appeals (130 S. W. supra), affirmed by Chief Justice Brown of the Supreme Court, in reality upon an analysis involved an entire contract, but which was repudiated by the lumber company before final performance. Also see McLane v. Elder, 23 S. W. 757, above cited.

After an extended oral argument by counsel for appellees, we have carefully gone over this record again, and believe that this case had been properly reversed as to all the appellants.

[10] It was suggested in oral argument by appellees' counsel that the appeal bond in this case is defective in that it is not made payable to all the opposite parties, and that therefore this court is without jurisdiction. The Acts of 1905, c. 115, now article 2104 of the Revised Statutes, Vernon's Sayles', authorizes the amendment of appeal bonds from all courts, both as to matters of form and substance. When the appeal bond was filed, this court acquired jurisdiction of this cause, and, if it was informal either in matters of form or substance, appellees should

have filed their formal motion, pointing out the defect in time, that appellants could have amended, if found defective. Oliver v. Lone Star, etc., Ass'n, 136 S. W. 508.

The motion for rehearing is therefore overruled.

HENDRICKS, J., concurs. WILLIS, Special Justice, absent.