WELLINGTON RAILROAD COMMITTEE
et al. v. CRAWFORD et al. (No. 76–2842.)

(Commission of Appeals of Texas, Section B.
Nov. 5, 1919.)

**1. BILLS AND NOTES ⚖⇒164—RAILROAD BONUS NOTE NONNEGOTIABLE.**

Notes given as part payment of bonus to railroad and made conditional upon completion of certain grade before certain time were nonnegotiable, and contractors to whom railroad had transferred notes had no greater rights against makers than railroad itself would have enjoyed.

**2. SUBSCRIPTIONS ⚖⇒15(1) — CONTRACT REQUIRING ENTIRE PERFORMANCE OF CONDITIONS BY RAILROAD.**

A contract, whereby a railroad company agreed to construct and operate a railroad to a town, in consideration of which citizens agreed to do certain things and pay a certain bonus to the company *held* to be an entire contract, so that complete performance by the company was necessary to the acquisition by it of any rights, though certain things were to be done and certain payments made before completion of road, since apportionment of benefits to subscribers on partial performance was impossible, and their payments were mere advancements which could be recovered back on failure to perform.

**3. SUBSCRIPTIONS ⚖⇒12—JOINT OR SEVERAL LIABILITY OF SUBSCRIBERS TO RAILROAD BONUS.**

Where citizens of town agreed to contribute toward construction of railroad to the town under a contract entered into by a committee of the citizens, and individually executed notes payable to railroad upon completion of road within certain time, the liability of a citizen so subscribing was severable and not joint, extended only to amount subscribed, and was not affected by any agreement of the committee not authorized by the contract.

**4. SUBSCRIPTIONS ⚖⇒21(4)—PLEADING SUBSCRIBERS' BREACH OF CONTRACT NECESSARY.**

In an action on notes given by subscribers to a bonus to a railroad and made conditional upon completion of road by certain date, railroad contractor to whom notes had been transferred suing on notes notwithstanding failure to complete road within required time could not avoid such condition upon ground of breach of contract by the citizens making such completion impossible without pleading such breach.

**5. SUBSCRIPTIONS ⚖⇒21(4) — PLEADING PERFORMANCE OF CONTRACT BY RAILROAD.**

A contract, whereby citizens of a town agreed to make certain payments to and do certain things for railroad upon completion and operation of railroad, being an entire contract, a railroad contractor suing on the citizens' notes could not recover without alleging performance of the contract.

**6. SUBSCRIPTIONS ⚖⇒21(1)—RIGHT OF CONTRACTOR TO SUE ON SUBSCRIPTION CONTRACT.**

Where citizens of a town agreed to make certain payments and do certain things in con-

sideration of construction and operation of a railroad, and executed notes to railroad conditioned upon completion of track within certain time, railroad contractors to whom notes had been transferred could not, upon failure to complete road within required time, recover on notes, notwithstanding citizens' breach of contract making performance within required time impossible, where contractor, despite breach, treated contract as in force, since contractors, upon breach, had right either to ignore breach and claim rights under contract, or treat contract as at an end and sue for breach.

**7. VENUE ⚖⇒21—PRIVILEGE OF PENDENTE LITE PURCHASERS.**

Parties who acquired notes after action to recover possession thereof had been brought, having acquired their rights pendente lite, were in no position to assert a right to be sued in the counties of their respective residences.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by Wellington Railroad Committee and others against C. W. Crawford and others. Judgment for plaintiffs reversed by Court of Civil Appeals (174 S. W. 1004), and plaintiffs bring error. Judgment of Court of Civil Appeals reversed, and judgment of trial court affirmed.

G. A. Brown, of Oklahoma City, Okl., R. H. Cocke, Jr., and R. H. Templeton, both of Wellington, and Charles L. Black, of Austin, for plaintiffs in error.

W. W. Wilkinson, of Ft. Worth, J. L. Lackey, of Burkburnett, M. Reynolds, of Wellington, H. B. Hill, of Shamrock, L. D. Miller, of Wheeler, and R. E. Taylor, of Henrietta, for defendants in error.

MONTGOMERY, P. J. The record in this case is very voluminous. The transcript contains more than 300 pages, and the statement of facts about 250 pages. We will not undertake to set out the pleadings of the various parties, but will, as briefly as possible, give a history of the transactions out of which this litigation arose, and the facts, so far as necessary, to a proper understanding of the conclusions reached by us.

This litigation arose out of a contract made by numerous citizens of Wellington, Tex., and the Altus, Lubbock, Roswell & El Paso Railroad Company, by which the citizens, acting largely by and through a committee selected by them, agreed to pay certain sums under certain conditions, in order to secure the construction and operation of a railroad to Wellington. For convenience, the Altus, Lubbock, Roswell & El Paso Railroad Company will be called the "railway company," and the committee above referred to will be designated as the "committee." We think it necessary to set out the contract which is the basis of this suit. Said contract was as follows:—

"This contract and agreement made and entered into this the 15th day of April, A. D. 1909, by and between the Altus, Lubbock, Roswell & El Paso Railroad Company, a corporation duly chartered and incorporated under and by virtue of the laws of the state of Oklahoma, whose capacity to sue and be sued is hereby admitted by and through Edward Kennedy, president and duly authorized agent of the said Altus, Lubbock, Roswell & El Paso Railroad Company, party of the first part, and the Wellington Railroad Committee of Wellington, Texas, composed of C. B. Boverie, chairman, Vernon Glenn, secretary, A. V. Cocke, treasurer, T. M. Stansell, J. S. Campbell, C. W. Roberts, P. W. Myers, S. Y. Pritchard, John Aaron and R. H. Templeton, and all others who contributed and subscribed to the railroad bonus hereinafter mentioned, parties of the second part, witnesseth:

"(1) That the said parties in consideration of the covenants and agreements hereinafter mentioned, hereby mutually covenant and agree, each with the other, as follows: That said party of the first part, or their assigns, doth hereby agree and obligate itself to construct, equip and complete for operation, and operate same, a railroad of standard gauge from the town of Wellington, Collingsworth county, Texas, to the town of Hollis, in the county of Greer, in the state of Oklahoma, where passenger and freight facilities shall be maintained, said road to be a continuation of the trunk line of the Altus, Lubbock, Roswell & El Paso Railroad; to erect and equip at Wellington, Texas, depot, yard switches, etc., commensurate with all reasonable needs and demands of passenger and freight traffic at said town of Wellington, Texas.

"(2) That in consideration of the advantages, benefits and conveniences to accrue from the construction and operation of said line of railroad from Wellington, Texas, to Hollis, Oklahoma, said parties of the second part hereby agree to pay to the party of the first part the sum of forty thousand dollars, on the terms, conditions and stipulations hereinafter provided, and furthermore, to furnish free of cost to party of the first part grounds for depot, station, switch yards in or near the town of Wellington, Texas, or where said second party may locate said grounds for depot, station and switch yards, said depot grounds to be in the amount of forty acres, same being suitable for said depot grounds, switch yard, and right of way across Collingsworth county, Texas., via Wellington, Texas, according to the survey to be made by virtue of this contract, said right of way to be 100 feet in width.

"(3) That said party of the second part shall deposit in the banks of Wellington, Texas, the sum of four thousand dollars in cash, subject to the checks of Edward Kennedy, president of the said first party, railroad company, for engineering and promoting said line of proposed road from Wellington, Texas, through said Collingsworth county, Texas; also said second party shall deposit in the said banks of Wellington, Texas, good notes for the sum of thirty-six thousand dollars, $16,000 of which shall become due and payable when said first party completes said grade of said proposed railroad between the towns of Wellington, Texas, and Hollis, Oklahoma, according to this contract; the remaining $20,000 of which shall become due and payable to the first party upon the completion of said railroad between the said towns of Wellington, Texas, and Hollis, Oklahoma, according to the terms of this contract.

"(4) The said party of the first part shall make a preliminary survey of the said road between the towns of Wellington, Texas, and Hollis, Oklahoma, within sixty days, and shall make a complete and permanent survey within sixty days from the making and signing of this contract.

"(5) That the said parties of the second part shall begin securing deeds of right of way within ten days from the time of notice that survey locating said right of way has been completed, and continue same with due diligence until deeds to the entire right of way have been secured. Said deeds of right of way are to be delivered to party of the first part upon its obtaining a charter from the state of Texas, to build and maintain over permanent survey; in case condemnation proceedings are necessary to secure any part of said right of way, said party of the first part shall institute proper proceedings to secure same upon notice by party of the second part that such condemnation proceedings are necessary, and said second party shall pay all cost, expense of court and damage that may be awarded by such proceedings; said second parties are to secure legal services for the institution and prosecution of such condemnation proceedings.

"(6) It is agreed by and between both of the parties hereto that the grading of said railroad shall begin at Wellington, Texas, within sixty days from the date of this contract, and pushed to completion as rapidly as possible, and be completed not later than March 1st, 1910, after date hereof, and failure to complete said grade on or before said date forfeit all rights, interests and privileges under and by virtue of this contract.

"(7) That party of the first part agrees that the steel rails used in the construction of said road shall not be lighter than sixty pounds rails, and that the material used on the construction of said road shall in all things be first class material.

"(8) That party of the first part shall execute deed to said forty acres of land as soon as same has been located and secured, and said deed shall be delivered in escrow in the First National Bank of Wellington, Texas, to be delivered to party of the first part upon the completion of said road to Wellington, Texas, according to the terms of this contract.

"(9) In consideration of the parties of the first part furnishing right of way from Wellington, Texas, west through Collingsworth county, Texas, party of the first part agrees not to demand an additional bonus from that herein recited for the extension of said road over said survey to be hereafter made, but nothing herein shall be construed to prevent party of the first part from receiving any bonus to locate any town on said survey.

"(10) It is further understood and agreed by and between the parties hereto that in consideration of the advancement of the four thousand dollars in cash to the first party by the said second party for the engineering and promoting said road, the said party of the first part agrees to deposit in the First National Bank of Wellington, Texas, upon the signing of this contract

four thousand dollars in preferred stock in the said Altus, Lubbock, Roswell & El Paso Railroad Company of the line between Altus, Oklahoma, and Hollis, Oklahoma, which is now under construction, said stock to be unincumbered for security in favor of the said second party that said first party will complete said preliminary survey and complete said permanent survey as provided for in this contract, and in case grade is not completed as provided and in the time specified, then, and in that event, the said four thousand dollars in stock of said railroad shall become the property of and payable to the second party.

"(11) The party of the first part obligates itself to construct, equip and complete said line of railroad from Hollis, Oklahoma, to Wellington, Texas, on or before January 1st, 1911, and failure by party of the first part to complete said road according to the terms of this contract and in the time herein specified thereby forfeits all rights, interest and claims upon the said second party by virtue of this contract. It is hereby agreed that time is made an essential of this contract, and is a part of this consideration passing from the said second party.

"(12) The said railroad shall be deemed constructed, equipped and completed by party of the first part in making a trip over said line of road with a train equipment consisting of one engine and ten freight cars, and another equipment consisting of one engine and combination baggage and mail coach and three passenger coaches on or before said January 1st, 1911.

"(13) It is agreed and understood that should the party of the first part fail to begin actual work on said grade within the time specified in the contract, or fail to complete the grade within the said time herein specified and stipulated for the completion of same, said first party thereby forfeits any and all rights, interests and claims by virtue of this contract upon said second party. It is further agreed and stipulated that if the said party of the first part, or its assigns, fail to construct, equip and complete and operate said line of road from the said town of Hollis, Oklahoma, to Wellington, Texas, within the time herein specified for the completion of the same, and in the manner herein specified, said first party shall thereby forfeit any and all further claims to interest by virtue of this contract.

"(14) This contract is made in duplicate and signed by all parties hereto in duplicate, and each is a copy of the other, and each an original."

The contract was signed by the railway company and by the committee named therein, and by a large number of other persons who executed some of the notes referred to in the contract. There were, however, a large number of persons who executed notes who did not sign the contract.

After the execution of the contract, a form of note was agreed on by the railway company and the committee, the form being as follows:

"$——. No.——.

"Wellington, Tex., April 15, 1909.

"On demand, six months after date, without grace, for value received, I, we, or either of us, promise to pay to the order of Edward Kennedy in Wellington, Texas, at First National Bank, —— dollars, with interest after maturity at the rate of 10 per cent. per annum until paid, and if not paid at maturity, and collected by an attorney, or by legal proceedings, an additional sum of ten per cent. on the amount of this note as attorney's fees.

"This note is given as part payment of bonus as per contract between the Wellington Railroad Committee and the Altus, Lubbock, Roswell & El Paso Railroad Company, of even date with this note, and it is to become due and payable upon completion of the grade for said railroad between Wellington, Texas, and Hollis, Oklahoma, according to said contract, and in case the grade is not completed on or before March 1st, 1910, this note is to become null and void on that date."

The committee secured the notes to be executed by divers persons in the aggregate sum of $16,000. These notes, for convenience, will be called "grade notes": and, under an agreement of the parties, these notes were delivered to C. J. Glenn, cashier of the First National Bank of Wellington, to be held by him until the railway company should have completed the grade in accordance with the contract; at which time he was to deliver the notes to the railway company. The notes for $20,000, called for in the contract, were also executed by various parties, but, under an agreement between the committee and the president of the railway company, were held by A. V. Cocke, one of the committee. The notes, as executed, were approved by the railway company.

After the above transaction, the railway company caused a survey to be made, and made a contract with J. E. Hines and A. C. Crawford, by which Hines and Crawford were to do the necessary grading for the railway company, at a stipulated price, and were to receive in part payment therefor the $16,000 of "grade notes" when the grade was completed; and the balance was to be paid in cash by the railway company. Before the work was done, Hines quit the partnership, and was succeeded by F. T. Collingsworth. Crawford and Collingsworth graded a large part of the roadbed, and under their testimony had almost completed the work when, on February 7, 1910, they were, at the suit of one J. C. Stansell, enjoined from entering on a section of the land, across which the survey ran, for the purpose of constructing said grade.

As to this section of land, the committee had secured a deed for the right of way, but the description of the land was so defective as to pass no title. This defect, however, was overlooked by the committee, and not known to it until the injunction was issued. The deed which was secured had been delivered to the railway company and accepted by it, and it had failed to call the attention of the committee to the defect.

On February 12, 1910, five days after the

issuance of the injunction, a condemnation proceeding was instituted by the railway company to comdemn the right of way across the Stansell land; and the right of way was duly condemned, and the proper judgment was entered on March 4, 1910. The injunction suit was dismissed in May, 1910, and Crawford and Collingsworth again began work and finished the grade some time thereafter, and in May, 1910, got their final estimate from the engineer of the railway company. There was, however, an issue of fact in this case as to whether the grade was ever completed in the manner provided for in the contract between the railway company and the committee.

On March 24, 1910, Crawford and Collingsworth filed a suit, No. 181, in the district court of Collingsworth county, against the railway company and Kennedy, its president, and most of the committee and several other persons who signed the contract, and alleged the execution of the contract between the committee and the railway company, and that they, under the contract with the railway company, had completed the grade, and that the $16,000 of "grade notes" had been assigned to them, and prayed for judgment against the defendants for said notes or their value.

On April 4, 1910, the railway company and Kennedy filed an answer and cross-complaint in said suit against the committee and others, alleging a breach of the contract by the committee, and asking judgment for the "grade notes."

On May 17, 1910, the committee, joined by numerous other persons who executed the contract with the railway company, filed their answer and also a plea in reconvention, in which they allege: The execution of the contract above referred to, and that the railway company had failed to construct the railroad provided for in said contract, and that the consideration for all of the notes had failed, including both the $16,000 "grade notes" and the $20,000 in notes payable upon the completion of the railroad; and further alleging that the "grade notes" were in the possession of the First National Bank of Wellington and C. J. Glenn, who held the same in escrow; and praying that said bank and said Glenn be made parties to the suit, for judgment against all the parties declaring said construction contract and all of said bonus notes canceled, and for the possession of, said "grade notes."

On December 16, 1910, Crawford and Collingsworth, the railway company, and Kennedy dismissed their several suits and cross-actions, and thus left the case pending only upon the reconvention of the committee.

In April, 1912, the above suit being still pending, C. J. Glenn, the custodian of the "grade notes," delivered all of them, except about $1,000, to Crawford and Collingsworth. These "grade notes" were by Crawford and Collingsworth assigned and delivered to divers persons.

On June 27, 1912, the Wellington Railroad Committee and others, who were defendants in the original suit, amended their pleadings and filed what is styled "plaintiff's first amended original petition," and thereafter they are designated as plaintiffs. The parties designated as defendants are C. W. Crawford, F. T. Collingsworth, Edward Kennedy, the railroad company, and several other persons to whom it is alleged that the "grade notes" had been delivered by Crawford and Collingsworth.

The plaintiffs' petition covers 48 pages of the transcript, and it is possible only to set out in a general way the allegations thereof. The making of the contract hereinbefore set out is alleged and a breach thereof on the part of the railway company and Crawford and Collingsworth by failure to complete the railway grade within the time provided for in the contract, and it is further alleged that the railroad company and Crawford and Collingsworth had breached the entire contract by total failure to complete and operate the railroad. The facts with reference to the execution and delivery of the "grade notes" to the First National Bank of Wellington and Glenn, its cashier, in escrow, are alleged, as hereinbefore set out, and the further fact that notwithstanding the pendency of the suit the bank and Glenn had delivered said notes to Crawford and Collingsworth and that they had been by Crawford and Collingsworth delivered to the other persons named as defendants, which persons it is alleged lived in Tarrant and Gray counties. It is further alleged that the parties having possession of the notes were threatening to bring separate suits on each of said notes in counties other than Collingsworth county and to join in said suits Crawford and Collingsworth as indorsers, in order to give the court jurisdiction.

There was a prayer for an injunction enjoining the defendants and each of them from transferring, selling, or otherwise disposing of any of said notes or from bringing any suit thereon pending the trial of the case, and a further prayer that on the trial plaintiffs have judgment for possession of said notes and for the cancellation thereof and for recovery against the railroad company for the moneys furnished to pay for the right of way and depot grounds, etc.

The writ of injunction was granted as prayed for, and duly issued. Harry Weis and all the other parties defendant to whom the notes had been transferred by Crawford and Collingsworth filed pleas of privilege claiming the right to be sued in the counties of their respective residences. These pleas of privilege were overruled.

Crawford and Collingsworth answered by alleging that the grade to the railroad company had been completed and that failure to

complete it within the time named in the contract was due to the failure on the part of plaintiffs to secure the right of way and to the issuance of the injunction in the suit brought by Stansell, and that said injunction suit was brought with the connivance and consent of the plaintiffs in order to prevent a completion of the grade within the time named in the contract. They admitted having received the "grade notes" except for about $1,000 from the bank and Glenn, and that they had assigned and sold certain of said notes to the other defendants. They further alleged that, before entering into the contract to construct the grade for the railroad company, they were informed by the officers of the railroad committee that if the grade was properly completed the "grade notes" would be delivered and paid whether the railroad was ever completed or not. They alleged that they owned certain of the "grade notes" executed by plaintiffs and prayed for judgment thereon and for damages, etc.

Weis and the other defendants holding the notes by transfer from Crawford and Collingsworth, in addition to their pleas of privilege, adopted the answers of Crawford and Collingsworth and also pleaded in reconvention for a judgment on the notes held by them, and in the alternative for judgment against Crawford and Collingsworth for the sums paid to them for said notes.

The railroad company and Kennedy disclaimed any interest in the "grade notes" and pleaded other matters not necessary to be set out.

The defendants made application for change of venue, which was overruled.

The case was tried by jury upon special issues, and on the verdict judgment was rendered for the plaintiffs, the railway committee and others. Upon appeal the judgment was reversed and the cause remanded for a new trial. 174 S. W. 1004.

## Opinion.

The record in this case is so voluminous, and so many questions are raised, that we will not attempt to treat the several assignments separately, but will determine only those matters which we think are of controlling importance.

[1] We have set out the contract in full and shown the character of the notes executed. The notes are nonnegotiable, and the rights of the parties holding and suing on them in this case are no better than the rights of the railway company would have been if the notes had never been transferred by it.

The notes executed by the several subscribers to the fund to be given as a donation to the railway company refer to the contract, and the rights and liabilities of the subscribers depend in a large measure upon the proper interpretation of the contract as evidenced by the written agreement and the notes.

[2] As we construe the contract, it is in its nature entire. The railway company, before it was entitled to any benefit under the contract, was required to complete and operate the railroad to the town of Wellington. Its agreement was to build, equip, and operate the railroad, and as an inducement to do so the railway committee acting for the citizens of Wellington agreed to do certain things and make certain payments. The nature of the contract, the advantages to be derived by the citizens of Wellington from its performance, as well as the language of the contract itself, clearly indicate that the complete performance by the railroad company was necessary to the acquisition by it of any right under the contract. A partial performance by the railroad company would not have conferred upon the subscribers any of the incidental advantages which constituted the sole consideration for the execution by them of the contract.

The contract makes full performance by the railway company of the entire contract a condition precedent to the right of the railway company to receive and retain any benefits under it. The first, second, eleventh, and thirteenth paragraphs of this contract clearly indicate that it was the intention of both parties that the contract should be entire. The fact that there was an agreement to furnish certain sums of money and secure right of way and depot grounds and deliver the grade notes before the completion of the railroad does not in our opinion make the contract a severable one.

"A contract is entire when by its terms, nature, and purpose it contemplates and intends that each and all of its parts and the consideration shall be common to each other and interdependent. On the other hand, it is the general rule that a severable contract is one which in its nature and purpose is susceptible of division and apportionment." 13 C. J. 561.

"The fact that a contract provides for payment from time to time as the work progresses under the contract does not itself render the contract severable unless the provision amounts to an apportionment of the consideration to the separate portions of the work, and this is true generally of installment payments under a contract." 13 C. J. 564.

There could be no possible apportionment of benefits under the contract in this case. Its partial performance could be of no possible advantage to the subscribers. The payments to be made before completion of the road were mere advancements, and, being such, if the railway company failed to perform the entire contract the amount so paid could be recovered back.

[3] We also think that, in so far as the liability of the makers of the notes is concerned, their liability was several, and not joint. The committee was the limited agent of the subscribers and had no authority as such except as expressed in the contract. Each sub-

scriber was bound only for the amount of the notes executed by him or contributions promised by him, and was not bound by any agreement made by any member of the committee not authorized by the contract.

If, as claimed by Crawford and others, some of, the subscribers by causing an injunction suit to be brought prevented the completion of the grade, the liability, if any, for such acts, was that of those causing the suit to be brought, and not of those innocent of any wrong.

With these preliminary conclusions announced, the main question in this case is: What are the rights of the parties under the facts shown? For our present purpose we concede, as claimed by Crawford and others, that the grade was completed, and that under the contract the completion of the grade entitled them to the possession of the grade notes. We further concede that they were entitled to collect the grade notes, and, if payment was refused, could at any time before the time for the completion of the railroad have maintained a suit for their collection. The evidence in this case, however, shows that long before the trial of this case, and in fact before the filing of a cross-action by Crawford and others to recover on the notes, the time for the completion of the railroad had expired, and it had not been completed, and the enterprise had been abandoned. Under these circumstances, could the court properly render judgment on the notes? We have already stated that the contract was entire, and that the railroad and those claiming under it were entitled to nothing under the contract unless the road was completed. If the notes had been paid and afterwards the building of the railroad abandoned, each subscriber would have been entitled to recover the amount paid by him from the railway company. If we are correct in the foregoing conclusion, then it is evident that the notes at the time of the trial were not valid obligations, and the subscribers were entitled to their cancellation unless the right of the subscribers was affected by the alleged breach of the contract relied upon by Crawford and Collingsworth and the other holders of the notes.

[4] As to this matter, which seems to be the ground upon which the Court of Civil Appeals acted, we think that the alleged breach and repudiation of the contract was not available as a defense by Crawford and others, for two reasons: First, because the alleged breach was not plead by Crawford and others. The Court of Civil Appeals as to this point based its decision on the allegations of an abandoned pleading of the committee. This pleading had been superseded by amendment and was no longer a part of the pleadings in the case, and if, as claimed, it amounted to a renunciation of the contract, that fact should have been pleaded by Crawford and others if they desired to avail themselves of such renunciation. Second, because even if the committee had renounced the contract, yet the evidence shows that Crawford and others did not accept the renunciation and elect to treat the contract as at an end, but, on the contrary, after the alleged breach continued, as they had a right to do, to treat the contract as in full force and continued to work upon the grade of the railroad. Crawford and others evidenced their election not to abandon the contract, not only by continuing to perform, but in this case as tried, insisted by their pleading that they were entitled to recover on the contract itself. They nowhere alleged the breach of the contract as an excuse for failure to fully perform, and nowhere alleged that they were damaged by the breach. In fact, they stand upon the contract, and, treating it as divisible, seek to recover the amount of the grade notes without showing either a performance of the entire contract or any sufficient reason why it was not performed.

[5] The contract being entire, Crawford and others could not recover on the contract without alleging performance. If, as claimed, the committee had breached the contract and they accepted the same as terminating the contract and relieving them from their obligation to perform, their cause of action should have been based, not on the contract itself, but for damages by reason of its breach.

[6] Our view of the situation is that the contract being entire, if breached by the subscribers, the railway company and others claiming the notes had the right either to ignore the breach and continue to perform and claim their rights under the contract, or to treat the contract as at an end and sue for damages for its breach.

The principles applicable to breaches of contract by announcing that it will not be performed are clearly shown in Greenwall Theatrical Co. v. Markowitz, 97 Tex. 485, 79 S. W. 1071, 65 L. R. A. 302, where it is said:

" 'The law with reference to a contract to be performed at a future time, where the party bound to performance announces prior to the time his intention not to perform it, as established by the cases of Hochster v. De la Tour and the Danube and Black Sea Company v. Xenos, on the one hand, and Avery v. Bowden, Reid v. Hoskins, and Barwick v. Buda, on the other, may be thus stated. The promisee, if he pleases, may treat the notice of intention as inoperative, and await the time when the contract is to be executed, and then hold the other party responsible for all the consequences of nonperformance; but in that case he keeps the contract alive for the benefit of the other party as well as his own; he remains subject to all his own obligations and liabilities under it, and enables the other party not only to complete the contract, if so advised, notwithstanding his previous repudiation of it, but also to take advantage of any supervening circumstances which would justify him in declining to complete it.

" 'On the other hand, the promisee may, if he thinks proper, treat the repudiation of the other party as a wrongful putting an end to the contract, and may at once bring an action as on a breach of it; and in such action he will be entitled to such damages as would have arisen from the nonperformance of the contract at the appointed time, subject, however, to abatement in respect of any circumstances which may have afforded him the means of mitigating his loss.'

"When the promisee adopts the latter course, treating the contract as broken and himself as discharged from his obligations under it, he resolves his right into a mere cause of action for damages. He is no longer concerned with the disposition which the promisor may make of the subject matter of the contract. Kadish v. Young, 108 Ill. 170 [43 Am. Rep. 548]; Johnstone v. Milling, 16 Q. B. Div. 467; Roper v. Johnson, L. R. 8 C. P. 167; Roehen v. Horst, 178 U. S. 1 [20 Sup. Ct. 780, 44 L. Ed. 953]; Anson on Con. 368 et seq., and authorities cited; Cyclopedia Law and Procedure, 635–637, and authorities cited."

It is true that the railway company and its assigns were, when the grade was completed, entitled to the possession of the grade notes and to maintain suits thereon against the several makers. If, however, as in this case, no suit was brought, or if brought and not tried until the time for the completion of the railroad had expired, the several makers of the notes had a right to defeat a recovery by pleading and proving an abandonment of the undertaking by the railway company.

If, as we have attempted to show, the notes had been paid, the failure to complete the railroad would authorize the recovery of the money so paid, then it is evident that the court in this case should not, after the happening of the event preventing recovery, render judgment on the notes.

In LaFayette County Monument Corp. v. Magoon, 73 Wis. 627, 42 N. W. 17, 3 L. R. A. 761, it appears that Magoon had given a check to the monument corporation in payment of a subscription to aid in the construction of a monument. There was an agreement that the donation was made on the condition that by a certain named date $6,000 should be raised for the monument fund. Before the time expired within which the $6,000 should have been raised, suit was brought on the check and judgment rendered for the association. Magoon appealed. Subsequent to the appeal the time within which the $6,000 was to have been raised expired, and Magoon attempted to have the judgment reversed on account of the failure to raise the sum of $6,000. This relief was denied, but the court said:

"The failure to raise $6,000 for the monument fund by March 1, 1888 (if such failure has occurred) is not a defense to this action, although, had the action been pending after that date, such failure might, perhaps, have been interposed, by leave of court, as a counterclaim, arising puis darrien continuance, provided the stipulation between the parties in that behalf is valid and binding upon the plaintiff—a proposition not here determined."

The court in the opinion further said:

"It has already been suggested that if the condition contained in the contract between the parties of April 6, 1887, is valid, and if there has been a breach thereof, the defendant can recover of the plaintiff, in any proper action or proceeding, the amount paid upon his subscription. In such case, the judgment herein not having been paid, it would be against equity and good conscience to require the defendant to pay it. Under the old practice he could probably be relieved of the judgment by a suit in equity to restrain its collection. But, if entitled to relief, the present practice gives him a simpler and more summary remedy; that is by a motion to the circuit court, upon a proper showing, to discharge the judgment. If such a motion be made after the cause shall have been remitted to that court, and that defendant can satisfy the court that such condition is a valid and binding one upon the plaintiff, and that it has been broken, and the defendant shall pay the costs of this action, we think the motion should be granted."

In our opinion the principle announced above is sound. Under the undisputed facts Crawford and Collingsworth and those claiming under them were not entitled at the time of the trial to any recovery on the notes.

If we are correct in this conclusion, then it necessarily follows that the judgment rendered by the trial court was the only possible judgment in this case.

[7] We think the court properly overruled the pleas of privilege of all of the defendants who asserted a right to be sued in the counties of their several residences. Long before these notes were transferred to such defendants, the committee had brought suit for possession of the notes, and the custodian of the notes was a party to the suit. The parties who acquired the notes thereafter were properly made parties to this suit, and, having acquired whatever rights they had pendente lite, were in no position to assert a right to be sued in the counties of their respective residences. As what we have said disposes of the whole case, we do not think it necessary to consider other errors assigned.

We recommend that the judgment of the Court of Civil Appeals be reversed, and that the judgment of the trial court be affirmed.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.