## GREENWALL THEATRICAL CIRCUIT COMPANY v. E. MARKOWITZ.

No. 1274.    Decided April 11, 1904.

**1.—Contract—Repudiation—Pleading.**

Pleading in suit on contract for employment of plaintiff as manager and transfer to him of interest in lease of an opera house, held to allege a repudiation of the contract by defendant while still wholly executory and to seek damages for such repudiation, and to preclude the plaintiff from recovering a share in the proceeds afterward acquired by defendant by a surrender of the lease. (Pp. 483-485.)

**2.—Repudiation of Contract—Election of Remedies—Damages.**

Where a contract, still wholly executory, is repudiated by one party, the other may treat it as at an end and sue for the profits which he would have acquired under it as damages from its breach, or may insist on its performance and retain the interest in the subject matter given him by the contract; but he must elect between these remedies and can not combine them; and where he chooses the former, he can claim no interest in or damages by reason of the sum received by the adverse party by disposing of the subject matter in which the contract, if he had adhered to it, would have given him an interest. (Pp. 485-487.)

Error to the Court of Civil Appeals for the First District, in an appeal from Galveston County.

Markowitz sued the Greenwall Theatrical Circuit Company and recovered judgment, but appealed, complaining of insufficiency of the recovery. The appellate court reversed and rendered judgment in his favor for a larger amount, and appellee obtained writ of error.

*Kleberg & Neethe,* for plaintiff in error.—The Court of Civil Appeals held that the mere verbal repudiation by appellee, before the contract was performable, of the rights of appellant and the return of the $3000 note to Kempner, its indorser, did not constitute a breach of the contract between the parties; the said court erred in holding that the sale of the lease by appellee to Kyle on the 16th day of November, 1901, constituted a breach of said contract of which appellant could complain, and for which he was entitled to recover damages, because by its very terms said contract was rendered null and void and had ceased to have any existence as early as October 1, 1901, a month and a half prior to said sale, by the failure of appellant to pay appellee the sum of $1000, as he had agreed to do, being one-half of the yearly rent of the Beaumont opera house. Kilgore v. Northwestern Baptist Assn., 90 Texas, 139; Dingley v. Oler, 117 U. S., 490; United States v. Smoot, 15 Wall., 36; Frost v. Knight, L. R. 7 Ex., 111; Benjamin on Sales, sec. 568.

The Court of Civil Appeals erred in not holding that a total failure of consideration was shown by the evidence in the case. Because the uncontradicted evidence shows that Kempner, being an accommodation indorser, revoked his indorsement, as he had a right to do, prior to the time that anything was done under the contract and prior to the time that the Greenwall company became the absolute owner of said note; and because the evidence further shows that the note was returned to him at his request and in accordance with an understanding between Greenwall and Kempner that it should be returned if the matters were not straightened out; and it further shows that Markowitz, after being aware that said note had been returned, never paid or offered to pay the amount due by him under the contract or on the note, nor did he pay or offer to pay the thousand dollars rent for which he was liable on October 1, 1901. 1 Am. and Eng. Enc. of Law, 2 ed., 340; Burkley v. Tinsley, 88 Va., 1001; Tenn. Bank v. Johnson, 1 Swan, 233; Bank v. Howard, 48 Minn., 390.

The Court of Civil Appeals erred in holding that the sale of the lease and the sum it brought, bear such relation to the breach of the contract as to furnish the plaintiff a measure of damage for its breach. Houston & T. C. Ry. Co. v. Hill, 63 Texas, 381; Jones v. George, 61 Texas, 345, 354; Hadley v. Baxendale, 9 Exch., 341; Calvit v. McFadden, 13 Texas, 327; Howard v. Company, 139 U. S., 199, 209; Central Trust Co. v. Clark, 92 Fed. Rep., 293, 298; Peace River Phosphate Co. v. Graffin, 58 Fed. Rep., 552; Frazer v. Echo Mining Co., 9 Texas Civ. App., 210; Equitable Mortgage Co. v. Weddington, 2 Texas Civ. App., 373, 376; Ball v. Britton, 58 Texas, 57; Bagley v. Smith, 10 N. Y., 489; 1 Suth. on Dam., 119.

The Court of Civil Appeals erred in not holding that the District Court should have sustained the general demurrer and special exceptions of the appellee to appellant's petition, for the allegations therein of the damages sought to be recovered are vague and uncertain and the damages as alleged are too remote, contingent, speculative and uncertain to form the basis of a recovery. Central Trust Co. v. Clark, 91 Fed. Rep., 295, 298; Houston & T. C. Ry. Co. v. Hill, 63 Texas, 381; Coosa Mining Co. v. Carolina Mining Co., 75 Texas, 860, 865; Frazer v. Echo Mining Co., 9 Texas Civ. App., 211.

*Jas. B. & Chas. J. Stubbs,* for defendant in error.—The court erred in not instructing the jury correctly as to the measure of damages, in that it failed to tell them that plaintiff, if entitled to recover for breach of the contract, should receive as his damages, in whole or in part, one-half of the net profits realized by the sale or disposition by defendant of the lease and other assets.

The court erred in instructing the jury in the following terms: "You have nothing to do with the amount received by defendant from Kyle for the terminating of the lease of the premises." As the lease of the opera house and the engagements of dramatic companies were the principal, in fact, the only assets of the Greenwall company, any use or disposition of such assets by either copartner was for the benefit of the firm, and if, instead of conducting the business for five years, appellee chose to place upon it an estimate of its present value or earning capacity and dispose of it at that figure, the resultant gains belong to the firm as much as those that might have been realized from day to day by giving performances in the leased building during the entire term. The transaction was analogous to the sale by one partner of a stock of goods, or any other assets owned by him, but the profits upon which, if retailed through a given term, he had agreed, for value, to divide with his copartner. In such a case a breach of the agreement could not deprive his associate of an equal division of the profit obtained by the summary sale and closing out of the business. Under the obligation of partners to observe good faith, one of them will not be allowed to secure or retain for himself the profits arising from a transaction concerning the partnership. He must account to his firm for every benefit derived by him, without the consent of his copartner, from any use by him of property or other matters which the firm either own or are entitled to the benefit of. By accepting the amount paid for the lease and bookings, appellee itself determined their net value, that is the estimated value at that date of prospective earnings, thus establishing a measure of damage and virtually declaring that instead of carrying on the business of which the lease was the chief asset and instrument for five years and reaping the profits that might be derived therefrom, it considered that $15,000 paid during the first year of the lease was a fair discount or present value of such profits, upon the receipt of which it would transfer the right thereto

97 Supreme—31.

and the opportunity to earn a larger sum during the remainder of the term. Appellee held the lease and bookings in trust for the firm composed of it and appellant, and is bound to account to the firm for the profits thereof, whether made in the course of five years by using the lease and giving shows during that time, or in a less period by disposing of the lease and assets, thus anticipating the result, or rather, thus fixing and receiving a cash or surrender value upon the contract and the prospect of larger gains at the end of the contract period. 22 Am. and Eng. Enc. of Law, 2 ed., 115, 116, 117, and notes; Henson v. Byrne, 41 S. W. Rep., 497; Mitchell v. Read, 84 N. Y., 556; Moody v. Matthews, 7 Ves., 185; Brincefield v. Allen, 60 S. W. Rep., 1011; Cullinan v. Standard L. and P. Co., 65 S. W. Rep., 689; Dilley v. Ratcliff, 1 Texas Ct. Rep., 333; Zimmerman v. Huber, 29 Ala., 379; Howard v. S. and B. Mfg. Co., 139 U. S., 147; Kimberly v. Arms, 129 U. S., 512; Story on Partnership, 174-178; Story's Agency, 211; Karrick v. Hannaman, 168 U. S., 328; Brigham v. Dana, 29 Vt., 1; Wells v. National L. A., 99 Fed. Rep., 229; Bagley v. Smith, 10 N. Y., 489; Reiter v. Morton, 96 Pa., 243; 1 Lindley on Partnership, 307; Laffan v. Naglee, 9 Cal., 662; Nevins v. Thomas, 80 Texas, 597; Johnson's Appeal, 115 Pa. St., 129; Lacy v. Hall, 37 Pa., 360; McMahon v. McClernan, 10 W. Va., 419.

The Court of Civil Appeals properly held that defendant in error was not under an obligation to tender payment of the $3000 note indorsed by Kempner, which the Greenwall company had accepted as cash, nor the sum of $1000, which the partnership contract required Markowitz to pay on the 1st of October of each year during the term of the lease, the same being one-half the annual rent of the opera house, for the reason that plaintiff in error had, prior to the dates when those payments would have become due, repudiated and refused to perform the contract for partnership in any respect, and, in so far as it could do so, had dissolved the copartnership. It was not necessary for Markowitz to do a futile thing, that is, offer to pay money which the other party had in advance refused to receive. Besides, the company did not ask a new trial and are concluded by the verdict and the conclusions of fact on appeal, as to all issues of fact. Roper v. Schaefer, 35 Mo. App., 30; Bradley v. Ely (Ind.), 50 Cent. Law Jour., 168.

Answering the error assigned, we maintain that defendant in error was entitled to one-half of the profit made upon sale of the lease and theatrical engagements, because the company had agreed to hold the lease in trust for him and itself in order that they might, through its use, earn a profit, and the disposition of the lease and bookings at a profit merely anticipated that expected to be realized during the five years term. Or, upon the other hand, if it should not be so regarded, the sale of the lease was such a diversion of it from the purpose to which it had been dedicated by the agreement sued on, that it amounted to a conversion on the part of the company, who was the agent of its copartner, and a profit thus wrongfully obtained, was charged with the trust relation existing between the parties and was the subject of division

just as if it had been secured through the retention and use of the lease. Globe Refining Co. v. Landa Cotton Oil Co., 190 U. S., 543; Notes to National Union Bank v. National Mechanics Bank (Md.), 27 Law. Rep. Ann., 483; Mitchell v. Read, 61 Barb., 310; Featherstonhaugh v. Fenwick, 17 Ves. Jr., 299; Clegg v. Edmondson, 8 DeG. M. & G., 787; Clements v. Hall, 2 DeG. M. & J., 173; Chamberlin v. Chamberlin, 12 Jones & S., 116; Collyer on Partnership, 160; Clegg v. Fishwick, 1 Macn. & G., 294; 1 Hall & T., 396; 19 L. J. Ch. N. S., 49; 13 Jur., 993; Struthers v. Pearce, 51 N. Y., 357; Leach v. Leach, 18 Pick., 68; Johnson's App., 115 Pa., 129; Speiss v. Rosswog, 96 N. Y., 651; 1 Bates on Partnership, 303; Karrick v. Hannaman, 168 U. S., 336; Ambler v. Whipple, 20 Wall., 546, 555, 557; Pearce v. Ham, 113 U. S., 585, 593; Miller v. O'Boyle, 89 Fed. Rep., 140; Williamson v. Monroe, 101 Fed. Rep., 322; 2 Story on Partnership, sec. 174; 2 Kent, Com., 51; Spears v. Willis, 151 N. Y., 452; Pomeroy v. Benton, 57 Mo., 544; Dimond v. Henderson, 47 Wis., 176; Stroughton v. Lynch, 1 Johns. Ch., 467; Snyder v. Lunsford, 9 W. Va., 223.

WILLIAMS, ASSOCIATE JUSTICE.—This action was brought by Markowitz against the Greenwall Theatrical Circuit Company on the 23d day of January, 1902, to recover damages for breach of a written contract attached to the petition. This contract was executed between the parties July 16, 1901, and, by it, defendant, in consideration of the payment of $3000 in cash (called "bonus"), agreed to give to plaintiff the position of business manager of the Kyle Opera House in Beaumont during the term of defendant's lease thereof from its owner, Kyle, for five years, to begin October 1, 1901, and to pay plaintiff for his services $20 per week during the theatrical season, and one-half of the net profits, payable at the end of each theatrical season, about May 1st each year. But defendant reserved the right, if it should "feel that the interests of all concerned are not thoroughly taken care of," to remove plaintiff from the position of business manager and replace him by another, in which event plaintiff should receive only the half of the net profits. The losses of the business were to be borne equally by the parties. Plaintiff bound himself to act as business manager and give the business his personal attention in the best possible manner, and, in addition to the $3000 bonus, agreed to pay on the 1st day of October each year $1000, the half of the yearly rent of the opera house; and the contract expressly stipulated that his failure to meet this payment when due "makes this contract null and void." The petition after stating the terms of the contract contained the following allegations and prayer:

"That said defendant, although plaintiff has in all things kept and performed the obligations of his said contract, a substantial copy of which marked 'A' is hereto annexed and made a part hereof as fully as if incorporated herein, regardless of its obligations, violated and repudiated said contract on or about September 10, 1901, and refused to carry

it out in any particular; wherefore and whereby a cause of action accrued to this plaintiff to recover damages for the breach of said agreement by defendant.

"Plaintiff also shows that defendant, without the knowledge or consent of ·plaintiff and in. disregard of his rights, sold and disposed of the lease of said opera house and other rights and assets, for the sum of fifteen thousand dollars ($15,000), which said lease was by defendant, or its representative, transferred to W. W. Kyle, at Beaumont, Texas, in or about the month of November, 1901.

"Plaintiff shows that said lease and the business of said opera house are and would in all probability continue to be profitable during the full period of said lease and would be worth the sum of not less than fifteen thousand dollars ($15,000) per year net, to which plaintiff, by virtue of said contract, was or would be entitled to one-half, and under any circumstances, would be entitled to one-half of the value of said lease, which value he alleges to be not less than $30,000.

"Premises considered, plaintiff sues and prays due process to defendant, and upon hearing, judgment for his said damages, present and prospective, but in the alternative, for one-half the value of said lease and for interest, costs of suit, and general relief."

The evidence shows the following state of facts: In lieu of the cash payment required by the contract the note of plaintiff for the amount, indorsed by I. H. Kempner, was accepted by defendant. At the time of the execution of this contract defendant held the agreement of W. W. Kyle to build the opera house and to lease it to defendant for five years, beginning October 1, 1901, at a rental of $2000 per annum. Shortly after the contract between plaintiff and defendant was concluded, Kyle raised objection to the proposed connection of plaintiff with the theater, and conversations and correspondence ensued between plaintiff, defendant and Kempner concerning an adjustment. Finally on September 10, 1901, Greenwall, the president of defendant company, asserted to plaintiff that the contract was invalid; that plaintiff had no contract, and, upon the latter insisting upon the validity of the agreement, declared to him that, if he insisted upon the contract, he had a law suit. After this Kempner, under the impression that the contract was at an end by mutual consent, without plaintiff's knowledge, demanded of defendant the return of the note for $3000, and it was returned to him. Plaintiff continued to insist upon the observance of the contract and his rights under it, and, upon learning of the return of the note, protested against it. Kempner thereupon explained to defendant the error under which he had acted and offered to return the note, but the latter continued to ignore the contract with plaintiff and to treat it as ended. Plaintiff, while insisting, as we understand his attitude and as it is defined by the Court of Civil Appeals, upon the maintenance of the contract, did not pay or offer to pay the $1000 due on the first day of October. He was able and willing to do so, but did not signify this to the defendant before or at the time the money became due otherwise than by insist-

ing upon the preservation of the contract; and he claims that he was relieved of the necessity of performing this undertaking by defendant's previous repudiation of its obligations. The theater was not quite completed by the 1st of October, but defendant accepted it and conducted the business in it until November 16th, and then, on account of differences with Kyle and other reasons, sold out the lease, with the contracts made with dramatic and opera companies for performances, to Kyle, the latter paying $15,000, returning $2000 paid by defendant in advance for rent for the first year, and agreeing to pay appellee $200 per annum for services in securing companies during the term of the lease.

Upon the trial in the District Court the plaintiff claimed the right to recover one-half of the net proceeds of the sale of the lease less proper deductions, but the trial judge instructed the jury that they had "nothing to do with the amount received by defendant from Kyle for the termination of the lease," and defined the measure of damages as one-half of the profits that would have been derived from the business had it been carried on, after deducting the $3000 bonus, and $5000 rent, which plaintiff would have had to pay. Upon appeal the Court of Civil Appeals was of the opinion that this was error, holding that plaintiff, upon the facts stated, was entitled to the recovery claimed by him, and accordingly rendered judgment in his favor. The defendant now assigns this as error, and we must hold that its position is well founded.

The contract was one of which performance was to commence in future. The petition distinctly alleged a breach of this contract and the accrual to plaintiff of a cause of action for damages through defendant's repudiation on September 10th, before the time for performance had come. The allegation of the subsequent sale of the lease was only the assertion of a claim for damages because of the breach alleged, and not of a cause of action first accruing from such sale. Before the time when defendant was bound to perform, it could not, by its renunciation of its obligation, put an end to the contract; but by its action it left the plaintiff at liberty, if he saw fit, to take it at its word, and treat its conduct as a breach and the contract as thereby terminated, and hold the defendant responsible for the damages resulting. This is plainly the cause of action pleaded. The allegation of such a repudiation and the assertion of a cause of action growing out of it leaves no doubt, upon the pleading, of plaintiff's election to treat this act of the defendant as a breach of the contract. He must be held, in his recovery, to that position, and his damages can not be measured by rules which might be applicable had he based his conduct and his suit upon a different theory inconsistent with that upon which he sues. The following statement of the principles governing such cases in Frost v. Knight, L. R. 7 Exch., 112, has commanded the acceptance of most of the text writers and courts in England and America:

"The law with reference to a contract to be performed at a future time, where the party bound to performance announces prior to the time his intention not to perform it, as established by the cases of

Hochster v. De la Tour and the Danube and Black Sea Company v. Xenos on the one hand, and Avery v. Bowden, Reid v. Hoskins and Barwick v. Buda on the other, may be thus stated. The promisee, if, he pleases, may treat the notice of intention as inoperative, and await the time when the contract is to be executed, and then hold the other party responsible for all the consequences of nonperformance; but in that case he keeps the contract alive for the benefit of the other party as well as his own; he remains subject to all his own obligations and liabilities under it, and enables the other party not only to complete the contract, if so advised, notwithstanding his previous repudiation of it, but also to take advantage of any supervening circumstances which would justify him in declining to complete it.

"On the other hand, the promisee may, if he thinks proper, treat the repudiation of the other party as a wrongful putting an end to the contract, and may at once bring an action as on a breach of it; and in such action he will be entitled to such damages as would have arisen from the nonperformance of the contract at the appointed time, subject, however, to abatement in respect of any circumstances which may have afforded him the means of mitigating his loss."

When the promisee adopts the latter course, treating the contract as broken and himself as discharged from his obligations under it, he resolves his right into a mere cause of action for damages. He is no longer concerned with the disposition which the promissor may make of the subject matter of the contract. Kadish v. Young, 108 Ill., 170; Johnstone v. Milling, 16 Q. B. Div., 467; Roper v. Johnson, L. R. 8 C. P., 167; Roehen v. Horst, 178 U. S., 1; Anson on Con., 368 et seq., and authorities cited; Cyclopedia Law and Procedure, 635-637, and authorities cited.

In Johnstone v. Milling, supra, the rule was thus stated: "Where one party assumes to renounce the contract, that is, by anticipation, refuses to perform it, he thereby, so far as he is concerned, declares his intention then and there to rescind the contract. Such a renunciation does not, of course, amount to a rescission of the contract, because one party to a contract can not by himself rescind it, but, by wrongfully making such a renunciation of the contract, he entitles the other party, if he pleases, to agree to the contract being put an end to, subject to the retention by him of his right to bring an action in respect of such wrongful rescission. The other party may adopt such renunciation of the contract by so acting upon it as in effect to declare that he too treats the contract as at an end, except for the purpose of bringing an action upon it for the damages sustained by him in consequence of such renunciation." The necessary consequence of both parties treating the contract as terminated by the renunciation of September 10th, as averred in the petition, was to prevent the accrual of any specific interest plaintiff might, by a different course, have acquired and preserved in the lease, the business to be conducted under it, and the proceeds of the sale of same. Had he

sued upon the theory that he had kept alive the contract and acquired and preserved a right in the subject matter until the sale took place, a different question would be presented. It is upon that view that plaintiff now attempts to sustain the judgment of the Court of Civil Appeals. If such a case is made by the evidence, which need not be considered, it is not only not supported by but is irreconcilable with the case made by the pleading; for it is very clear from the authorities that a contract can not be thus treated, for one purpose, as subsisting, and for another purpose as at an end. Upon such a repudiation of an executory agreement by one party, the other may make his choice between the two courses open to him, but can neither confuse them together nor take both. Johnstone v. Milling, supra. It would seem to follow necessarily that the cause of action which plaintiff set up in his pleading entitled him, if sustained by the evidence, to recover only for the loss which he sustained from the breach alleged, which was the profit he would have made from the business. At any rate, he has no cause to complain that he was allowed to recover according to that standard. The disposition of the lease, which the termination of the contract left the defendant free to make as it saw fit, in no manner altered that cause of action. Whether or not the evidence, showing, as it did, a continued insistence upon the contract on plaintiff's part after the attempt of defendant to recede from it, justified a recovery upon the theory of the petition, we are not called upon to consider. If it did not, the plaintiff can not upon that ground complain, and the defendant neither appealed nor sought a reversal in the Court of Civil Appeals.

It follows from what we have said that the measure of damages applied by the Court of Civil Appeals was inappropriate to plaintiff's action as he made it by his pleading, and the judgment of that court will be reversed, and the judgment of the District Court will be affirmed.

*Reversed and judgment of District Court affirmed.*