## MOORE v. MIDDLETON. (No. 973–5115.)

Commission of Appeals of Texas. Section B.
Jan. 23, 1929.

See also (Civ. App.) 289 S. W. 1045.

Lockhart & Garrard and F. D. Brown, all of Lubbock, for plaintiff in error.

Bean & Klett, of Lubbock, for defendant in error.

SHORT, P. J. The writ of error was granted in this case on account of the alleged conflicts alleged in the application between the judgment rendered by the Court of Civil Appeals, reversing the judgment of the district court and rendering judgment for the defendant in error, who was the original defendant, and certain other opinions rendered by certain other Courts of Civil Appeals named in the application, and in one case, Burks v. Neutzler, 2 S.W.(2d) 416, wherein the Supreme Court approved an opinion written by the Commission of Appeals, Section A. The opinion of the Court of Civil Appeals will be found in 4 S.W.(2d) 988.

The plaintiff in error, Louie F. Moore, sued the defendant in error, J. P. Middleton, alleging that the parties entered into a written contract for the sale by Moore and the purchase by Middleton of certain lands, the purchase price being $11,000, of which $3,750 was to be paid upon delivery of the deed, and among other things Middleton was to execute and deliver to Moore a note for the sum of $3,000 to bear even date with the deed and to be secured by a deed of trust on 160 acres of land, the note to be signed by Middleton and payable to Moore at the First National Bank at Lubbock, Tex. Moore agreed to furnish to Middleton "one complete abstract covering tracts Nos. 1 and 2 (being the land involved in the sale) showing good and merchantable title in him subject only to the amount to be assumed by party of the first part. In the event the title is not merchantable, it is agreed a reasonable time is to be allowed in which to perfect same."

In pursuance to the agreement, also in writing and a part of the original, Middleton deposited $500 in the First National Bank at Lubbock, Tex., as forfeit money to be paid

to Moore upon Middleton's default. This was the money for which Moore sued Middleton in this case and for which he recovered judgment in the district court; but, as stated above, this judgment was reversed and judgment rendered by the Court of Civil Appeals in favor of Middleton against Moore for costs. The deal was to be closed on December 1, 1925, according to the terms of the written contract; but this time was extended by mutual agreement to about January 1, 1926. Moore had prepared and ready for examination by Middleton the abstracts of title on November 27, 1925, but Middleton declined to receive them. About January 1, 1926, Middleton refused to complete the contract on the ground that by accident, fraud, or mistake the written contract did not specify that the $3,000 note secured by a mortgage on the 160 acres of land which he was to execute and deliver to Moore was to be so prepared when executed as to show that he (Middleton) was not personally liable for any part of the $3,000. Middleton also continued to refuse to examine the abstract of title offered to him by Moore. The only reason given by Middleton to Moore for refusing to finally close the deal was this alleged failure of the written contract to specify what he alleged to be the truth of the transaction.

Moore then sued Middleton for the $500 deposited as a forfeit in the bank, making the bank a party. The bank tendered the money to the court, less $50 allowed for presenting its answer. Middleton defended, alleging the failure of the written contract to state the truth of the transaction, and further alleging that the abstracts of title tendered to him by Moore failed to show the existence in Moore to the lands claimed to be owned by Moore a good and merchantable title. The case was tried to a jury upon special issues after the court had refused to give a peremptory instruction requested by Middleton, and the answers to these special issues were to the effect that the written contract did truthfully portray the real transaction between the parties, and that Moore had offered to Middleton for examination by him abstracts to the land which was the subject of the contract which Middleton refused to receive. Upon these answers a judgment was rendered, with the result as above stated.

The opinion of the Court of Civil Appeals is substantially based upon the proposition that in a contract like the one above mentioned, Middleton had the right to refuse to close the deal when the abstracts tendered to him by Moore did not show a good and merchantable title, and that his refusal to examine the abstracts did not constitute a waiver of his right to demand a good and merchantable title, nor did his conduct in this respect estop him from showing that the abstract tendered did not show a good and merchantable title in Moore, especially when there

were neither allegations nor proof that he had so waived his rights, and was therefore not estopped from asserting the existence of the defects. Since we agree that the abstracts tendered did not show a good and merchantable title in Moore, at the time they were tendered, to the land in controversy, for the reasons set forth in the opinion of the Court of Civil Appeals, and since we agree that to establish either a waiver or an estoppel the party seeking the benefit thereof must plead and prove the same, and since it is agreed that no such allegation or proof existed in this case, it will not be necessary to discuss these principles of law as applicable to the facts. We base our judgment exclusively upon the proposition that the record shows the existence of a state of facts which measured by the law entitles Moore to recover the forfeit placed with the bank by Middleton, and that the judgment of the Court of Civil Appeals should be reversed and that of the district court affirmed.

According to the verdict of the jury, Middleton breached the contract made by Moore. He refused to pay the money he promised to pay and execute the notes he promised to execute. His ground for refusal, as stated by him—and this statement binds him—was that the written contract did not represent the truth of the transaction on account of which he claimed to be exonerated from any obligations to do what he promised to do. He further breached the contract in refusing to receive and examine abstracts offered by Moore which Moore claimed showed a good and merchantable title in him to the land. Whether these abstracts did show a good and merchantable title was a mixed question of law and fact, the answer to which required expert knowledge of the law. It is not shown that Moore had this expert knowledge, nor does the record show that this particular matter had ever been brought to his attention. Apparently, Moore was acting in good faith when he claimed that the abstract did show a good and merchantable title. One of our appellate courts has held that Moore was correct in his claim that he did have a good and merchantable title as shown by the abstracts tendered. Rabinowitz v. North Texas Realty Co. (Tex. Civ. App.) 270 S. W. 579. The contract, among other things, has this provision:

"Party of the first part agrees to furnish party of the second part one complete abstract covering Tracts Nos. 1 and 2, aforesaid, showing good and merchantable title in him, subject only to the amounts to be assumed by Party of the second part. In the event title is not merchantable, it is agreed that reasonable time is to be allowed to perfect same."

█ It will be noted that the last sentence of this part of the contract quoted above shows that the parties contemplated that,

should the abstract tendered in the beginning be insufficient to show a good and merchantable title to the lands in Moore, he (Moore) would have the privilege, within a reasonable time, to supply the defects. Middleton, by refusing to close the deal based upon a ground not existing in fact, not only breached the contract he made with Moore by so doing, but he was guilty of misconduct and bad faith toward Moore in failing to examine the abstracts of title within a reasonable time after the same were tendered to him, which the record shows to have been more than 30 days before the deal was finally closed, and notifying Moore that he refused to approve the same because the same did not show a good and merchantable title in him to the lands in controversy. Moore was entitled to this information, and to have had a reasonable time before January 1, 1926, to have furnished Middleton with abstracts, showing good and merchantable title in him to the land in controversy. The error into which the Court of Civil Appeals apparently fell lies in the unfounded asumption that the abstracts tendered by Moore to Middleton showed that Moore could not have cured the defect within a reasonable time. This assumption by the Court of Civil Appeals is evidently incorrect, since there is no pleading or testimony by Middleton to the effect that Moore could not have cured the defect within a reasonable time. The opinion of the Court of Civil Appeals seems to conclude that there was only one way of curing this defect, and that the time required to cure the defect in this way would be an unreasonable time; but we do not understand that the defect could not have been cured by Moore in some other more expeditious way than the one suggested in the opinion of the Court of Civil Appeals. He might have secured deeds or releases or other instruments of writing from private individuals which would have been sufficient to have cured the defect within a reasonable time. There is no testimony in the record showing that at the time this transaction occurred these individuals having the right to execute these instruments might not have been reached, and their signatures secured within a reasonable time.

At any rate, Moore, under his contract, had the right to try to cure the defects within a reasonable time, at the expiration of which, had he failed, his right to demand the $500 placed with the bank to be paid him upon Middleton's default would have been destroyed. Middleton, by his conduct in claiming that the written contract did not evidence the true transaction, and that on account of Moore's refusal to accede to his demands he was under no obligation to complete the deal, showed a firm intention to abandon the transaction on account of this false claim made by him, and under the circumstances Moore was justified in assuming that Middleton had breached the contract and had abandoned the deal because of this claim on his part that the written contract did not speak the truth. In Burks v. Neutzler (Tex. Com. App.) 2 S.W.(2d) 416, it is said: "Where one party to a contract, by his conduct or misconduct, shows a fixed intention to abandon it, the other party is justified in treating it as abandoned." Kilgore v. Northwest Texas Baptist Educational Ass'n, 90 Tex. 139, 37 S. W. 598; Greenwall Theatrical Circuit Co. v. Markowitz, 97 Tex. 479, 79 S. W. 1069, 65 L. R. A. 302; Young v. Watson (Tex. Civ. App.) 140 S. W. 840; Schramm v. Hoch (Tex. Civ. App.) 241 S. W. 1087; Haddaway v. Smith (Tex. Civ. App.) 277 S. W. 728.

Believing that Middleton, by his conduct in claiming that the written instrument did not speak the truth of the transaction between the parties, which claim was afterwards shown to have been false by the verdict of the jury, indicated fixed intention to refuse to execute the contract, and further believing that Moore was deprived of a privilege given him by the contract to make an attempt within a reasonable time to cure the defect in his title shown by the abstracts of title by the conduct of Middleton in falsely claiming that the written contract did not speak the truth of the transaction, we are of the opinion that Moore is entitled to recover the forfeit money placed with the bank; and since the opinion of the Court of Civil Appeals in this case denied him this right, while the judgment of the district court evidenced it, we recommend that the judgment of the Court of Civil Appeals be reversed, and that of the district court be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed, as recommended by the Commission of Appeals.