**ASBURY v. TUCKER.**

No. 12647.

Court of Civil Appeals of Texas. Fort Worth.
March 12, 1932.

Rehearing Denied April 16, 1932.

Butts & Wright, of Cisco, and Marshall & King, of Graham, for appellant.

L. C. Counts, of Olney, for appellee.

DUNKLIN, J.

On February 21, 1930, H. N. Tucker executed to R. R. Asbury an oil and gas lease on 80 acres of land situated in Young county. The consideration recited in the lease was $1,000 cash in hand paid; and according to the stipulations in the lease the lessee was to

pay an additional sum of $1,000 out of one-fourth of seven-eighths of the oil produced from the lease, and also to drill an oil well on the land to a depth of 1,000 feet unless oil or gas in paying quantities be found at a lesser depth, and to spud in the well within forty days from the date of the lease; also to pay to the lessor one-eighth of all the oil or gas that might be produced from the land.

Contemporaneously with the execution of the lease, Tucker and Asbury entered into a written contract reciting the execution of the lease and the consideration to be paid and performed by the lessee. The contract also stipulated that the cash consideration of $1,-000 was to be paid upon approval of the title and delivery of the lease evidenced by Asbury's check in that sum. There was a further stipulation that the lease, together with a copy of the contract and the above-mentioned check for the cash consideration, was to be placed in escrow in the First National Bank of Olney to be held by that bank pending preparation and examination of the abstract of title for delivery, in accordance with the terms of the contract.

Tucker was named in the contract as party of the first part and Asbury as party of the second part, and the lease contained this further stipulation: "Party of the first part agrees to furnish to party of the second part complete abstract of title, certified down to date showing good title in him as to said land, said abstract to furnish within a reasonable length of time and as soon as same are returned from attorney examining title in connection with deal being made with Geo. L. Pace. Party of the second part is to be allowed a period of ten days after abstracts are submitted in which to have same examined and either accept the title or point out to first party in writing any objections that may have been disclosed by examination. In case objections are pointed out, then party of the first part is to be allowed ten days in which to have same cured or corrected and he herein agrees to use all due diligence to properly correct same. Upon approval of title, the escrow bank herein named is authorized to deliver the lease to party of the second part and the check of said second party for the $1,000.00 to party of the first part. If objections to said title are raised which it is impossible to cure or correct in the time allowed, the said bank is authorized to return the check to party of the second part and the lease to party of the first part, provided that party of the second part is to have the privilege of waiving objections and accepting the title. It is understood and agreed that the check for $1,000.00 is to be held in escrow but that the bank on which same is drawn will guarantee payment of the same when presented, if properly endorsed."

This suit was instituted by H. N. Tucker against R. R. Asbury, alleging the execution of the instruments referred to above, the failure to pay the $1,000 evidenced by the check, and for $2,000 for the depreciation in value of the lease, and $2,500 for the defendant's failure to drill the well as stipulated in the contract.

Plaintiff alleged that he in all things complied with his obligations recited in the contract; that at great trouble and expense he procured an abstract of title to the land and tendered the same to the defendant for his examination; that defendant failed and refused to accept such abstract and to have the title examined and stopped the payment of the $1,000 check, claiming that the contract was not binding upon him, thus evidencing his intention to abandon the contract; and that thereby he waived all objections to the title, if any such should appear in the abstract.

Among other defenses, defendant specially pleaded that after one or more wells in the vicinity of the 80-acre tract had been drilled in as dry holes, the plaintiff advised the defendant that the abstract was ready for delivery but he did not deliver it to the defendant, nor did he offer to deliver it to him within a reasonable time, as required by the contract, and by reason of such failure plaintiff himself breached the contract.

The trial was before the court without a jury, and judgment was rendered in favor of plaintiff for the sum of $880 as the difference between the $1,000 cash consideration recited in the contract between the parties and the sum of $120, the market value of the lease, title to which still remained in the plaintiff, upon findings by the court recited in the judgment that defendant had breached his contract after plaintiff had fully complied with his obligations embodied therein.

As shown by the testimony of Mr. A. A. Cooper, who was introduced as a witness for the plaintiff, the contract and lease were drawn up by him for the parties in his office in Olney, Tex., on or about the date of those instruments, and the check which was deposited in escrow along with those papers was also signed by the defendant in the office of Mr. Cooper. Mr. Cooper further testified as follows:

"As to what was said and done between the three of us at that time in relation to the abstract and how it should be handled, the abstract at that time was in the hands of Mr. George L. Pace of Wichita Falls, who was examining it in connection with another deal and we were to get that abstract back as soon as Mr. Pace had finished with it. The abstract was to come back to me. It was my understanding that Mr. Asbury was to get the abstract at my office, as there was no address given to me to forward the abstract anywhere.

"The furnishing of the abstract was discussed in my office, and it was all agreed to

that we were to use the same abstract in both deals, and Mr. Asbury was to be notified as soon as we got the abstract back from Mr. Pace, and it's my recollection he was to get the abstract at my office. I would have required a deposit on the abstract for the reason that it was being held in Dallas for the loan company who had a loan on the land, and we had to make a deposit to get the abstract. Mr. Pace had put up a $100.00 deposit on the abstract and when he mailed it back he wanted his $100.00 back, and I would have required a deposit before I would have delivered this, and that was also mentioned to Mr. Asbury. I don't think that he objected to that requirement, I do not recall that he did. It was understood that the Texas Land & Mortgage Company required a deposit of $100.00 on the abstract to guarantee the return of the abstract to them. That was also discussed in Mr. Asbury's presence, and he knew that fact, and he also knew that the Texas Land & Mortgage Company had a loan against this land, and that subject was also mentioned, and the abstract was borrowed from them to use in this deal."

The contract between the parties in specific terms required the plaintiff to furnish and deliver the abstract to the defendant, which necessarily implied that it was to be furnished at plaintiff's expense. Even though it could be said that the delivery of the abstract was to be made to the defendant in Mr. Cooper's office, it was clearly incumbent upon the plaintiff to show that he was ready and willing to furnish and deliver it when the defendant should call for it. The testimony of both plaintiff and Mr. Cooper was that the latter was acting for the plaintiff in the matter and there was no proof of any delivery or tender of the abstract by plaintiff himself. If Mr. Cooper's testimony would support a finding that there was a parol agreement between the parties made contemporaneously with the execution of the instruments, to the effect that the defendant was to pay $100 for the abstract, such parol agreement could not be given effect to relieve the plaintiff of the burden of showing a full compliance with his obligations in order to support a recovery, (1) because there was no pleading to support that parol agreement; and (2) it was in violation of the written contract. Texas Illinois Co. v. Gant (Tex. Civ. App.) 251 S. W. 575; Winkler v. Creekmore (Tex. Com. App.) 256 S. W. 257, and authorities there cited.

Accordingly, appellant's assignment of error presenting the contention that plaintiff failed to comply with his part of the contract, and for that reason, independently of all others, he did not make out a prima facie case, is sustained, and the judgment of the trial court is reversed and the cause is remanded without discussing other assignments, a determination of which becomes unnecessary.

## On Motion for Rehearing.

Appellant Asbury testified, in part, as follows:

"At the time this contract was made and entered into we were up in Mr. Cooper's office in Olney, and Mr. Cooper said the bank must guarantee the check or there would be no trade, and he called my attention to another similar contract lying on his desk. Mr. Tucker and I agreed to this. I saw Mr. Tucker the next day after the contract was made. I met him between 11 and 2 o'clock. On this occasion Mr. Tucker come running up to my car and said the bank said they wouldn't pay the draft, and I told him that was all right, it was all right with me. I supposed the deal was all off because he told me all the time that the money had to be in the bank or guaranteed by the bank, and I supposed by that, that the deal would be off. This was the next day after the contract was made and signed.

"About three or four days after this I saw Mr. Tucker again, but I don't recall what was said about the contract on this occasion. Some time in the latter part of March, 1930, I received a telegram from Mr. Tucker, and I did not do anything upon receipt of that telegram. * * * I supposed the abstract was ready for me when he sent me that telegram. The contract was made on February 21, 1930, and his telegram to me was sent on March 20, 1930. No, sir, I did not answer the telegram. After receiving the telegram from Mr. Tucker I believe I had a letter from you (Mr. Counts, attorney for plaintiff), and I stated in my letter to you the reasons why I didn't go ahead with the contract. I never told Mr. Tucker anything about his wife not signing the lease at the time he signed it. I dispute that part of his testimony. After I wrote you a letter I later called at your office and told you in substance that Mr. Tucker didn't have any cause of action against me because my bank failed to guarantee payment of the draft, and that Mr. Tucker was not bound under the contract and that he could not bind me. Mr. Tucker also told me that the day we made the contract or early the next morning. That's the only reason I have for not carrying out the contract. I didn't say at that time that I stopped payment of the check. I didn't stop payment of the check until two months after that, two months after the trade was off, some time in April or May.

"I made no objections to Mr. Tucker's title because I was never furnished with an abstract. I did not tell Mr. Tucker that I couldn't afford to take the lease then as the Routon well had come in dry. I was watching the progress of the drilling in that neighborhood, and when that well was being drilled I was over there every few days. If that well had come in a producer I don't suppose Mr. Tucker would have let me have the lease. If

he would let me have the lease, in the event that well came in a producer, I expect it would be hard to trade with him again."

Counsel for appellee calls our attention to that testimony, and based thereon insists, in effect, that the same shows an anticipatory breach of appellant's contract to have the Cisco bank guarantee the payment of the check prior to the time appellee was obligated to furnish the abstract of title, and quotes the following from the decision of the Commission of Appeals in Burks v. Neutzler, 2 S.W. (2d) 416, 418: "Where, one party to a contract, by his conduct or misconduct, shows a fixed intention to abandon it, the other party is justified in treating it as abandoned." And in line with that decision counsel also stresses the opinion of the Commission of Appeals in Moore v. Middleton, 12 S.W.(2d) 995, and Greenwall Theatrical Circuit Co. v. Markowitz, 97 Tex. 479, 79 S. W. 1069, 65 L. R. A. 302.

However, appellee in his pleadings did not rely for recovery on the theory of an anticipatory breach of the contract by Asbury. On the contrary, in his pleadings he alleged that the abstract required of him in the contract was furnished, showing a valid title in Tucker, and that the breach of the contract by Asbury occurred thereafter, which was nearly a month after the supposed anticipatory breach of the contract by Asbury. As said by Justice Brown in Kilgore v. Northwest Texas Baptist Educational Ass'n, 90 Tex. 139, 37 S. W. 598, 600: "The intention to abandon the contract at some future date is no breach of it; but, when that intention is declared in positive terms and unconditionally, it has the effect, in so far as the promisor is able to do so, to repudiate the contract itself, and to terminate the contractual relations between the parties. This affords to the other party the opportunity to accept the declarations, if he chooses to do so, and thus make effective the declarations of intention not to perform, rendering the contract thereby one that is broken on the part of the promisor himself. But, to have this effect, the declaration of an intention not to perform the contract in the future must be unconditional in its terms."

See, also, Moore v. Jenkins, 109 Tex. 461, 211 S. W. 975.

█ Even though it could be said that the testimony quoted was sufficient prima facie to show a positive and unconditional intention on the part of Asbury to repudiate the contract and to terminate the same as between him and Tucker—which it seems is at least doubtful—yet by reason of plaintiff's pleading noted above and testimony offered by him in support thereof, he is in no position now to rely on the supposed anticipatory breach of the contract by Asbury in support of the judgment rendered. Nor was there any pleading that defendant waived the furnishing by plaintiff of the abstract of title.

Under plaintiff's pleadings and evidence offered, it was incumbent upon him to make out a prima facie case by showing that he tendered to the defendant an abstract of title as was required under the contract, and in the absence of the discharge of that burden he was not entitled to a recovery. The cases cited by appellee do not support a conclusion to the contrary, and are distinguishable from the present suit by reason of the facts involved in them.

The motion for rehearing is overruled.