Joe ENGELBRECHT, Appellant,

v.

T. W. PITZER, Appellee.

No. 6499.

Court of Civil Appeals of Texas.

Amarillo.

May 16, 1955.

Rehearing Denied June 13, 1955.

Russell & Glover, Amarillo, Robert C. Ferguson, Jr., Stratford, for appellant.

E. E. Coons, Stratford, Floyd H. Richards, Dalhart, for appellee.

NORTHCUTT, Justice.

This is an action brought by T. W. Pitzer, hereinafter referred to as appellee, against Joe Engelbrecht, hereinafter referred to as appellant, for damages allegedly sustained by reason of an asserted anticipatory breach of a land sale contract, for a reformation and correction of said sale contract, recovery of title and possession of said real estate and to quiet title to said land. This case was tried to a jury upon Special Issues and judgment was rendered for appellee, upon the answers of the jury, ordering the above-mentioned sales contract reformed and corrected by eliminating from such contract the portion of the land described in such contract not being owned by appellee; that plaintiff recover judgment for damages in the sum of $16,341.46 with interest thereon from date of judgment at the rate of six per cent per annum; that the cloud cast upon appellee's title to the real property described in appellee's petition by reason of the sales contract between T. W. Pitzer and Joe Engelbrecht filed of record in the Deed Records of Sherman County, Texas in Vol. 89, Page 305 be removed and the title to said property quieted in T. W. Pitzer.

We are unable to understand how the court, under this record, arrived at the figure of $16,341.46 but that matter will not be considered any further. From this judgment, appellant has perfected this appeal.

It is undisputed in this case that the appellee could not have delivered title to a portion of the property covered by the contract hereinafter set out and appellee does not contend that he owned all the land covered in the contract and that he could not comply with the terms of the contract as written.

Since the contract of sale is of such a peculiar nature and is sought to be reformed and corrected, we are of the opinion that such contract should be copied in full which is as follows:

"This Memorandum of Agreement, made and entered into on this the 9th day of September, A.D., 1952, by and between T. W. Pitzer of Midland County, Texas, and Joe Engelbrecht of Sherman County, Texas, the said T. W. Pitzer being hereinafter referred to as First Party, and the said Joe Engelbrecht as Second Party;

"Witnesseth: That first party, for and in consideration of the sum of Fifty Thousand, Five Hundred Dollars ($50,500.00) to be paid to the first party by second party as hereinafter set forth, has Bargained and Sold, and does hereby obligate himself to convey to second party or his nominee or nominees in such tracts as second party shall designate, by good and proper deed or deeds of general warranty (except taxes for 1952), the following described land situate in the County of Sherman, State of Texas, to-wit:

"The North Half (N½) of Section One Hundred Sixty-three (163), All that part of Section One Hundred Sixty-four (164) lying south and east of the Rock Island Railroad, the West 22.35 acres of that part of the North Half (N½) of Section One Hundred Thirty-seven (137) lying south and east of the Rock Island Railroad, and that Part of the South Half (S½) of Section One Hundred Thirty-seven, and of the North Half (N½) of Section One Hundred Thirty-eight (138), awarded to E. T Pitzer in a cause styled E. T. Pitzer vs. Anton Weber et al., in District Court of Sherman County, Texas; Save and Except that first party reserves one-half of the oil, gas and other minerals in, under or that may be produced from the above described land, with the rights of ingress and egress to from and over the said land for the purpose of prospecting for, mining, drilling and producing such oil, gas and minerals and sufficient of the surface to efficiently effectuate such purposes. All said land located in Block One C (1C), G., H. & H. Ry. Co.

"In Consideration Whereof, second party promises and agrees to purchase the above described land and to pay first party said sum of Fifty Thousand, Five Hundred Dollars ($50,500.00), as follows: The sum of Thirty Thousand Dollars ($30,000.00) when title is approved or corrected as hereinafter mentioned, and the balance and remainder when the sale is finally consummated as hereinafter set forth.

"This Agreement, however, is Subject to the following terms, stipulations and conditions which are agreed to by both parties, to-wit:

"1. First party shall procure delivery of his abstracts of title to the above property (which are now held by The Federal Land Bank of Houston) to second party within a reasonable time, together with a supplemental abstract of title continuing such abstracts to date, and shall allow second party a reasonable time in which to have the same examined and furnish first party a written list of any objections he may have to the title to said land. After receipt of said list of objections (if any) first party shall have a reasonable time in which to procure corrections for such of the defects objected to which materially affect the marketability of the title to said land (which first party promises and agrees to procure at his own expense). Should second party have no objections to the title, or when material defects have been corrected as above mentioned, then second party shall pay first party the Thirty Thousand Dollars ($30,000.00) above mentioned, and at the same time first party shall deposit with the escrow agent hereinafter named, the deeds conveying said land as above mentioned. If all title corrections have been made prior to such time, this sale shall then be closed January 15, 1953, when the balance and

remainder of the consideration shall be paid and the deeds delivered to second party. If title corrections have not been made on January 15, 1953, then this contract shall be consummated when such title corrections have been made. However, should it be impossible for first party to procure corrections for any material defects objected to, then second party shall have the option of declaring this contract at an end and terminated or of accepting delivery of deeds without such corrections.

"2. Pending the consummation of this sale, second party has delivered to E. E. Coons of Texhoma, Texas, his check for the sum of Two Thousand Dollars ($2,000.00) as ernest money, to be held by said E. E. Coons (who is herein referred to as the escrow agent), and when title is corrected or approved by second party deliver the same to first party to be applied upon the Thirty Thousand Dollar payment above mentioned. Should second party elect to declare this contract terminated by reason of the fact that first party cannot cure any material defect, the said two thousand dollar check shall be returned to second party.

"3. This sale is made subject to the rights of the present tenant on said land, and posession thereof shall not be given to second party until the lease with the present tenant is terminated, but all rents on crops now growing on said land shall be delivered to second party, and second party shall also pay first party One Dollar ($1.00) per acre for plowing done on said land preparatory to sowing winter wheat thereon, not to exceed the sum of One Hundred Sixty Dollars ($160.00).

"4. This sale is also made subject to any valid oil, gas or mineral leases covering said land of record in the office of the County Clerk of Sherman County, Texas, and to all rights-of-way for roads, pipe lines, telegraph and telephone lines. No property situate on said land belonging to the present tenant (Joe Debbrecht) shall be included in this sale, whether attached as a fixture or not.

"5. This memorandum is made and executed in triplicate, each copy having the force and effect of an original, and its provisions shall bind the parties hereto, their heirs, executors, administrators and legal representatives.

"Witness our hands the day and year first above written."

(Contract signed by the parties and witnessed.)

It is undisputed that appellant, soon after entering into said contract, went into possession of the land to prepare it for another crop and received some rents. It is also undisputed that appellee did later deliver some abstracts and supplemental abstracts to the appellant and appellant took them to his attorney for examination. Appellant's attorney, on October 3, 1952, wrote his opinion and on October 13, 1952, appellant delivered the opinion to the appellee's attorney and said attorney, on October 14, 1952, notified appellee of such opinion and its contents. Immediately upon receiving this opinion, the appellee called the appellant and, according to appellee's testimony:

"A. I told Mr. Engelbrecht I had received this letter and there was three pages of objections and if it was going to cost me around $1500 or $2000 for additional titles and abstracts to satisfy his attorney, that just to forget about the whole deal; that the way it stood right then it satisfied Phillips Petroleum Company, Skelly Oil Company and the Federal Land Bank for several loans and I saw no reason why there should be three pages of objections to my title and I believe he said, as well as I recall, over the phone that he thought that was awfully high to be paid for even those objections and surely it wouldn't run that high and I said for him to talk to

Mr. Coons and find out and I told him I was going to call Mr. Coons also.

"Q. And, did you do that? A. I did that and he assured me it wouldn't cost anything in that proportion and he proceeded to work on the objections.

"Q. You told Mr. Coons to go ahead and clear up the title? A. That is right.

"Q. Now then, at that time or any other time, was there any discussion between you and Mr. Engelbrecht or his attorneys concerning what objections in the title opinion would be insisted upon and which ones would not be? A. Not with me.

"Q. You did not? A. That is right."

There seemed to be no further contact between appellant and appellee until appellant's attorney, on May 11, 1953, wrote appellee:

"because of your failure to meet the objections and furnish abstract of title to all this property, Mr. Engelbrecht hereby declares this contract terminated."

On June 6, 1953, appellee had his attorney to answer the appellant's letter of May 11, 1953 and there stated:

"Mr. Pitzer has requested me to write you and tell you that he will soon be in position to tender you deed conveying title to the land in a manner provided in the contract, at which time he will insist that you comply with your part of the contract, and pay for the land as agreed."

Appellee did not at that time offer to furnish the abstracts or a showing as to whether the corrections required by appellant's attorney had been corrected. On July 22, 1953, appellee wrote appellant as follows:

"With further reference to your letter of May 11 in which you declare our contract terminated, I wish to assure you that I have met the requirements, recorded them, and have the abstracts as requested in Mr. Arthur Glover's title opinion dated October 3, 1952, and I here and now tender the abstracts to you for your attorney's examination. The supplemental abstracts showing that all requirements have been met are now in the posession of my attorney, Mr. E. E. Coons, at Texhoma, Texas, and will be placed in your posession as soon as you advise me to do so.

"Mr. Engelbrecht, I have consulted other lawyers concerning our contract and after studying it I have been advised that you have no right to terminate the contract; *I insist that you complete the same as agreed upon.*" (Emphasis ours.)

It is stated in Vol. 17 C.J.S., Contracts, § 472, page 978, as follows:

"At his opinion the promisee may reject the repudiation of a contract and on such election the contract continues in effect for the benefit and at the risk of each of the parties."

Under the terms of the contract, appellee was to deliver abstracts to appellant. In the opinion of appellant's attorney, dated October 3, 1952, it was called to the appellee's attention that he had not delivered any abstract to appellant as to a part of the property in question. Neither did appellee ever deliver to appellant the abstract called for prior to the trial of this case in the trial court nor deliver the supplements to appellant or appellant's attorney for examination after the appellee claimed to have corrected the things called for in the opinion of October 3, 1952. In the attorney's opinion, it is shown that there is some $31,000 indebtedness against this property although it is admitted that appellant was paying all of the $50,500 in cash and was to receive marketable title to such property clear of all liens, the appellee makes no claim that he was in a position to pay off these liens against this property and deliver clear title to appel-

lant but pleads in Paragraph 2 of his amended petition that *after the execution of the written contract* in question, the appellee and appellant entered into an oral contract whereby it was agreed between the appellee and appellant that such encumbrances upon said land would be paid off and satisfied out of the purchase price contract to be paid by the appellant at the time of the payment of the $30,000. Appellee then pleaded in the alternative that if he was mistaken that they made such agreement; then through mutual mistake, such provisions for thus paying such encumbrances was omitted from said written contract; then as a second alternative if he was wrong in the other two pleaded, that it was a custom to pay off such liens from the proceeds of such sale. The first question asked the jury being Special Issue No. 1 was if *at the time plaintiff and defendant entered into the contract* (Emphasis ours) that they agreed that the encumbrance against the land would be paid out of the purchase price. The jury answered "Yes" but there is no pleading that such agreement was ever made. The jury then, by answer to Special Issue No. 2, found that the provisions for payment as asked about in Special Issue No. 1 was not omitted through mutual inadvertence or mistake but the jury did find that a reasonable time had not expired for appellee to meet the objections of appellant's attorney.

We are of the opinion, and so hold, that since appellee had not at any time delivered any abstract to a part of the land that appellant was purchasing under the terms of the contract that he had not complied with the terms of the contract and was not entitled to either specific performance of the contract or for damages because of appellant's refusal to proceed further as to the contract. It is admitted in appellee's brief where it is stated:

"It is true that no abstract was delivered to this land prior to the trial of the case but this statement excludes the fact that appellee did have such abstract prepared and tendered it to

appellant prior to the trial of this case."

In making this statement, the appellee refers to the letter written on July 22, 1953. This tender was made over ten months after the execution of the contract in question, over nine months after the opinion of appellant's attorney was delivered to appellee calling for this abstract and more than sixty days after appellant had notified the appellee that appellant was terminating the contract and, besides, this was only a tender and not a delivery as required by the contract.

Appellee, in his brief, states he is relying primarily on this anticipatory breach of the contract. When appellant wrote the letter of May 11, 1953, informing the appellee that he was cancelling the contract, if such cancellation was wrongful, the appellee did not have to proceed further but could have accepted such as a breach of the contract and brought suit for his damages but appellee did not choose to do so but wrote the appellant on June 6, 1953 and again on July 22, 1953 refusing to accept such cancellation but demanded that appellant proceed under the contract. By keeping the contract alive he had to comply with its terms. It is stated in Vise v. Foster, Tex.Civ.App., 247 S.W.2d 274, at page 280, writ refused, N.R.E.:

"(9) The court in making this award followed the rule found in 9 Cyc. 698. 'Although strictly and technically speaking there can be no breach of contract until the time for performance has arrived, yet if before that time arrives the promisor expressly renounces the contract and declares his intention not to perform it, the promisee may, in most jurisdictions, treat this as a breach, and may at once bring an action for damages. That is, positive notice of an intended breach of a contract to be performed in future may be treated as an actual breach. There is, however, another course open to the promisee. He may, if he pleases, treat the notice of intended breach as

inoperative and await the time when the contract is to be performed, and then hold the other party responsible for all the consequences of nonperformance. But in that case he keeps the contract alive for the benefit of the other party as well as for himself and remains subject to all his own obligations and liabilities under the contract, and enables the other party not only to complete the contract, notwithstanding his previous repudiation of it, but also to take advantage of any intervening circumstance which would justify him in declining to complete it.' (Italics ours.) 13 C.J. 804, p. 701, 17 C.J.S., Contracts, § 472. The Texas courts have followed this rule."

See also Green v. Franklin Dress Co., Inc., Tex.Civ.App., 137 S.W.2d 131, 132, where it is stated:

"(1) At the time defendant gave notice of his repudiation of the contract, the contract was not wholly performed. All that was required to be done at that time was the delivery of some of the goods called for by the contract. Under such circumstances, plaintiff had two remedies: he could have accepted the repudiation and sued for damages on the breach; or he could elect to consider the contract still in force, sue on the contract and hold defendant responsible for his nonperformance. This plaintiff did.

"(2) We think the case of Texas Seed & Floral Co. v. Chicago Set & Seed Co., Tex.Civ.App., 187 S.W. 747, writ of error refused, and the cases referred to, directly in point. In that case it is held that one party to the contract cannot by himself rescind a contract. The renunciation itself does not amount to a rescission. Greenwall [Theatrical Circuit Co.] v. Markowitz, 97 Tex. 479, 79 S.W. 1069, 65 L.R.A. 302; Kilgore v Northwest Texas Baptist Educational Soc., 90 Tex. 139, 37 S.W. 598."

See also Texas Seed & Floral Co. v. Chicago Set & Seed Co., Tex.Civ.App., 187 S.W. 747, writ refused.

Where a promissor renounces a contract or becomes unable to perform it, the promisee may declare a breach and base an action thereon, if an unconditional right to recover flows from the breach, for the reason that each party has a right to keep the contract open as a subsisting, effective agreement. Here the appellee unconditionally refused to accept the appellant's rescission of the contract and demanded appellant comply with the contract and thereby kept the contract open.

Appellee in a way seeks to recover under both theories. He unquestionably refused to permit appellant to call off the contract as appellant sought to do by his letter of May 11, 1953 but appellee insisted appellant complete the contract as agreed. Although appellee pleaded there was land covered in the contract that was placed therein by mutual mistake and seeks to have the contract reformed, at page 10 of his brief, he seeks to claim that his letter of July 22, 1953, being Exhibit 4, showed he was tendering good title to all of this property covered by the contract. Appellee acknowledges he did not deliver abstracts of title as he contracted to do but seeks to excuse himself on the grounds he wrote to appellant over ten months after the execution of the contract tendering abstracts of title. Appellee seeks to excuse his noncompliance as to delivery of abstracts on the ground he only agreed to procure delivery of the abstracts which were held by the Federal Land Bank of Houston together with supplemental abstracts of title to date. We are of the opinion, and so hold, that appellee was bound under the contract to deliver the abstracts, held by said bank, to the property being purchased by appellant and have the abstracts supplemented down to date and delivered to appellant for his attorney to examine. This he did not do.

Judgment of the trial court affirmed as to removal of the cloud cast on appellee's title

so far as the instrument of record in the Deed Records of Sherman County, Texas in Vol. 89 at Page 305 is concerned. But the judgment of the trial court be and is hereby reversed and rendered that appellee recover nothing as against the appellant so far as the damages of $16,341.46 with interest are concerned.