## BRANOM v. SCOTT. (No. 3348.)

Court of Civil Appeals of Texas. Amarillo. Jan. 29, 1930.

Rehearing Denied Feb. 12, 1930.

Nordyke & Pardue, of Lubbock, for appellant.

Douglas & Scott, of Lubbock, for appellee.

RANDOLPH, J. This suit was filed by M. A. Scott against J. C. Branom in the county court of Lubbock county to recover the sum of $200 contractual liquidated damages. Judgment for plaintiff, and defendant appeals.

The paramount question presented by this appeal is: Was the trial court authorized by the facts and law of the case to peremptorily instruct a verdict for the plaintiff, or, in other words, did the law and the facts introduced in evidence authorize the court to peremptorily instruct the jury to return a verdict for plaintiff, the provision for the abstract to be furnished within fifteen days not being of the essence of the contract?

The written contract between the plaintiff and the defendant, after providing the terms upon which the transfer of the property in controversy was to be made, contained these provisions:

"The parties will, within fifteen days after the date of this contract, deliver to each other full and complete abstracts of title, certified down to date, showing good and merchantable title to the respective lands which are to be conveyed by them; the abstracts on the Hopkins County property to be fully

paid for by Branom, and Scott is to order abstract sent to Lubbock National Bank covering his property, with a draft attached for approximately $19.00 abstract charges against same, which draft Branom is to pay and deduct from the commissions which are to be paid by Branom to Tipton as agent in this deal.

"After delivery of abstracts, the parties shall have a reasonable time for examination of title by attorneys of their choice and a reasonable time for curing objections after opinions delivered."

■ Does the contract by its terms furnish any evidence of an intention on the part of the parties thereto to make the time in which the abstract is to be delivered the essence of the provisions quoted? We think not. Taking the quoted provisions as a whole, it is evident that it was not intended that the 15 days was to be a "dead line" beyond which that part of the contract could not be complied with. The contract as a whole had no specific time for closing, but, as shown by the language relative to providing a "reasonable time" for the examination of the abstract by the attorneys of plaintiff and a "reasonable time" for curing objections after opinions were delivered, it was not the intention of the parties to make the 15 days of the essence of the contract. Taking the facts and circumstances surrounding the execution of the contract which are admissible in evidence on the question of such intent, it is very clear that the parties to it had no idea when they placed the provision in the contract of fixing an arbitrary date to make the delivery of the abstract the essence of the contract.

Alfred M. Scott, the attorney who drew the contract for the parties, testifies:

"I drew up the contract in controversy in this suit in our law office. Mr. C. C. Tipton brought both Mr. Branom and Mr. Scott into the office and introduced them. He said that they wanted a contract drawn, and after discussing the terms of the trade I asked both of the gentlemen if they had agreed on a particular time for the delivery of the abstracts to each other. They said that they had not, and I asked them if they wanted to fix any time. They said that they didn't know whether that was necessary or not. I told them that it was customary to fix some period of time within which to deliver the abstracts, just so as to have some kind of a reasonable limit, and I asked them if they thought that ten days would be enough. They said that they didn't know, that they might not be able to get the abstracts back by that time. No one seemed anxious to fix any time for the delivery of the abstracts at all, and it was more at my suggestion than anyone else's that they fixed one at all. I said, 'How much time do you want to give?' They both said that it didn't make any difference to them, whatever I thought would be a reasonable time. I then asked if fifteen days would be agreeable to both parties, and both of them thought they could get their abstracts back in that time. That was the reason the fifteen day provision was inserted in the contract. There was no conversation between the parties on that occasion about there being any hurry in the matter of closing the deal up at all. They didn't either one mention any particular reason for wanting to call the trade off if it wasn't closed up in any particular length of time, and it was for that reason that I left the time indefinite for closing, a reasonable time for examination and a reasonable time for curing defects if the opinions called for same. That was the extent of the conversation between them when the contract was drawn about the time for the delivery of the abstracts and for closing up the deal."

The defendant, Branom, testified, in part:

"At the time we entered into this agreement we had all come to a thorough understanding. We went up to Judge Scott's office to draw up this contract. As to what was said there relative to what time would be given for delivering the abstracts, me and Mr. M. A. Scott and Mr. Tipton was back there at the desk when he was drawing up this contract, and Mr. Scott asked us what stipulated time we wanted, and we told him it was immaterial. Then he says, 'Will ten days be enough?' and I said, 'Well, mine has to come about five hundred miles, it is in a bank down there, I don't know for sure that I can get mine back in ten days, but I thought that I could get mine back in fifteen days.' He said, 'Yes, that ought to give you plenty of time.' I went ahead and signed the contract with that stipulation in it. That was the contract that we all agreed upon. I don't know at this time whether I would have signed any other contract or not, but I did sign that one right there."

■ If the time was immaterial when the contract was drawn, it certainly was not of the essence of that contract. If it was desired by either party to make time of the essence of the contract, they should have made their intention clear that such was the case. Kirchoff v. Voss, 67 Tex. 320, 3 S. W. 548; South Texas Telephone Co. v. Huntington, 104 Tex. 350, 136 S. W. 1053, 138 S. W. 381; Nations v. Williams (Tex. Civ. App.) 203 S. W. 1176.

■ The contract in the case at bar bears date April 19, 1929; the 15 days expired on the 4th of May, 1929. If we concede that the abstract was not tendered to the defendant until the 6th day of May, 1929, the interval was so small that we cannot hold that it was not a compliance with the contract, especially in view of the fact that we hold that time was not of the essence of the contract under consideration.

Appellant attacks the contract because the description of the lands therein contained is insufficient to identify such land, and therefore the contract is unenforceable. The description of each party's land is as follows:

"That J. C. Branom agrees to sell and convey unto M. A. Scott, by good and sufficient general warranty deed of himself and his wife, a certain lot approximately 50x140 feet situated approximately 1½ blocks south of the main street, and even with the west end of the business houses thereon, in the town of Cumby, in Hopkins County, Texas, together with a certain five room frame house and other improvements situated thereon, which house was built about nine years ago, and which is the only property in the town of Cumby now owned by said Branom. Said property is to be deeded free of all incumbrances, except that the said Scott is to take same subject to all taxes for the year 1929.

"In consideration for the above property, the said M. A. Scott agrees to sell and convey to said J. C. Branom by good and sufficient general warranty deed of himself and his wife, a certain 126 acre tract of land, together with all improvements thereon, situated 3.7 miles southwest of the town of Portales, in Roosevelt County, New Mexico, and being the only property in said county owned by said M. A. Scott."

We think this description is sufficient—that which can be by the description made certain is certain.

The fact that the abstract was indorsed "Supplemental Abstract" is no proof that the abstract was not a complete abstract covering the title to the land. There is no evidence to show that it was not complete, and the evidence of the plaintiff that it was a complete abstract is uncontradicted. Further, the abstract was not introduced in evidence, at least the statement of facts does not contain it, and we have no way of ascertaining whether it was a complete abstract or only a supplement to an original abstract, beyond the testimony of the plaintiff that it was complete.

The defendant raises the question that the title to a part of the land which plaintiff had contracted to sell him was defective, and therefore plaintiff could not have complied with his contract.

In the first place, the defendant waived his right to raise this question by not raising it when he refused to receive the abstract. His only reason stated was that the abstract did not come in in time. Second, the refusal to receive the abstract was only a part of the injury done to the plaintiff. The plaintiff had the right to correct any defect pointed out to him, and was to be given a reasonable time to do so. This opportunity was not

afforded him. Moore v. Middleton (Tex. Com. App.) 12 S.W.(2d) 995. Third, as we understand the record, the defect in the title consisted of a levy on a small part of the land which Scott was to convey him, for the purpose of collecting some delinquent taxes on the whole of the land due to the state of New Mexico. While there is really no proof of any legal levy, yet, if there was, under the contract the defendant's duty was to discharge these taxes. In the contract of purchase, the defendant bought the land subject to "all taxes now unpaid," and also the taxes for the year 1929.

Having considered all propositions and assignments, and finding no reversible error, we affirm the judgment of the trial court.